# IN THE SUPREME COURT OF CALIFORNIA

KENNEDY DONOHUE,
Plaintiff and Appellant,

v.

AMN SERVICES, LLC,
Defendant and Respondent.

S253677

Fourth Appellate District, Division One
D071865

San Diego County Superior Court
37-2014-00012605-CU-OE-CTL

February 25, 2021

Justice Liu authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Corrigan, Cuéllar, Kruger, Groban and Hoffstadt* concurred.

---

\*      Associate Justice of the Court of Appeal, Second Appellate District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

DONOHUE v. AMN SERVICES, LLC

S253677


Opinion of the Court by Liu, J.


Under California law, employers must generally provide employees with one 30-minute meal period that begins no later than the end of the fifth hour of work and another 30-minute meal period that begins no later than the end of the tenth hour of work. (Lab. Code, § 512, subd. (a); Industrial Welfare Commission (IWC) wage order No. 4-2001, § 11(A) (Wage Order No. 4).) If an employer does not provide an employee with a compliant meal period, then "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal . . . period is not provided." (Lab. Code, § 226.7, subd. (c); Wage Order No. 4, § 11(B).)

In this case, we decide two questions of law relating to meal periods. First, we hold that employers cannot engage in the practice of rounding time punches — that is, adjusting the hours that an employee has actually worked to the nearest preset time increment — in the meal period context. The meal period provisions are designed to prevent even minor infringements on meal period requirements, and rounding is incompatible with that objective. Second, we hold that time records showing noncompliant meal periods raise a rebuttable presumption of meal period violations, including at the summary judgment stage.

1

In light of our holdings, we reverse the Court of Appeal's judgment and remand the matter to permit either party to bring a new summary adjudication motion as to the meal period claim. (See *TRB Investments, Inc. v. Fireman's Fund Ins. Co.* (2006) 40 Cal.4th 19, 23, 31–32 (*TRB Investments*).)  The remand offers the parties the opportunity to present evidence and arguments bearing on the question of liability in light of our analysis here.

## I.

Defendant AMN Services, LLC (AMN) is a healthcare services and staffing company that recruits nurses for temporary contract assignments.  Between September 2012 and February 2014, plaintiff Kennedy Donohue worked as a nurse recruiter at AMN's San Diego offices.  In that role, Donohue did not have predetermined shifts but was expected to work eight hours per day.  Per AMN's company policy, nurse recruiters were provided with 30-minute meal periods beginning no later than the end of the fifth hour of work.  AMN's policy and trainings emphasized that the meal period was an "uninterrupted 30 minute" break, during which employees were "relieved of all job duties," were "free to leave the office site," and "control[led] the time."  The policy also specified that supervisors should not "*impede* or *discourage* team members from taking their break."

Until April 2015, AMN used an electronic timekeeping system called Team Time to track its employees' compensable time.  Employees used their work desktop computers to punch in and out of Team Time, including at the beginning of the day, at the beginning of lunch, at the end of lunch, and at the end of the day.  Employees could also ask to manually adjust any inaccurate time punches — for example, if they forgot to clock

out for lunch or if they worked when they were clocked out. For purposes of calculating work time and compensation, Team Time rounded the time punches to the nearest 10-minute increment. For example, if an employee clocked out for lunch at 11:02 a.m. and clocked in after lunch at 11:25 a.m., Team Time would have recorded the time punches as 11:00 a.m. and 11:30 a.m. Although the actual meal period was 23 minutes, Team Time would have recorded the meal period as 30 minutes. Similarly, if an employee clocked in for work at 6:59 a.m. and clocked out for lunch at 12:04 p.m., Team Time would have rounded the time punches to 7:00 a.m. and 12:00 p.m. In that case, the actual meal period started after five hours and five minutes of work, but Team Time would have recorded the meal period as starting after exactly five hours of work.

AMN also used Team Time to manage potentially noncompliant meal periods. Before September 2012, whenever Team Time records showed a missed meal period, a meal period shorter than 30 minutes, or a meal period taken after five hours of work, AMN assumed there had been a meal period violation and paid the employee a premium wage. In September 2012, AMN added a feature to Team Time to comply with the meal period requirements articulated in *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004 (*Brinker*): When an employee recorded a missed, short, or delayed meal period, a dropdown menu would appear on Team Time. The dropdown menu prompted the employee to choose one of three options: (1) "I was provided an opportunity to take a 30 min break before the end of my 5th hour of work but chose not to"; (2) "I was provided an opportunity to take a 30 min break before the end of my 5th hour of work but chose to take a shorter/later break"; (3) "I was not provided an opportunity to take a 30 min break before the

end of my 5th hour of work." The employee was required to choose an option before submitting his or her timesheet at the end of the pay period. If the employee chose the first or second option, then AMN assumed the employee was provided with a compliant meal period but voluntarily chose not to take one, and the employee did not receive premium pay for a meal period violation. If the employee chose the third option, then AMN assumed there had been a meal period violation and paid the employee a premium wage. In addition, at the end of each biweekly pay period, employees were required to sign a certification statement: "By submitting this timesheet, I am certifying that I have reviewed the time entries I made and confirm they are true and accurate. I am also confirming that . . . I was provided the opportunity to take all meal breaks to which I was entitled, or, if not, I have reported on this timesheet that I was not provided the opportunity to take all such meal breaks . . . ."

AMN relied on the rounded time punches generated by Team Time to determine whether a meal period was short or delayed. Consider the example above, where a 23-minute lunch starting at 11:02 a.m. and ending at 11:25 a.m. was recorded on Team Time as a 30-minute lunch starting at 11:00 a.m. and ending at 11:30 a.m. Before September 2012, AMN would not have paid a premium wage for this lunch because it would have appeared as a full 30-minute meal period in the Team Time records. Similarly, after September 2012, the dropdown menu would not have been triggered for this lunch because it would have appeared as a compliant meal period on Team Time. In other words, Team Time would not have prompted the employee taking the lunch to indicate whether there had been a meal period violation.

In April 2014, Donohue filed a class action lawsuit against AMN. Donohue alleged various wage and hour violations, including the meal period claim at issue here. In October 2015, the trial court certified a class of all nonexempt California nurse recruiters who were employed by AMN between April 23, 2010 and April 26, 2015 with respect to the meal period claim. April 26, 2015 marks the end of the class period because on that date AMN switched to a timekeeping system that does not round time entries.

In November 2016, Donohue filed a motion for summary adjudication. As to the meal period claim, Donohue argued that AMN denied its employees compliant meal periods, improperly rounded time records for meal periods using Team Time, and failed to pay premium wages for noncompliant meal periods. To support the motion, Donohue submitted her testimony that AMN had an office culture that discouraged employees from taking full and timely lunches. Donohue also provided a declaration from an expert witness, a statistics professor. According to the expert, the use of Team Time resulted in the denial of premium wages for 40,110 short lunches and 6,651 delayed lunches during the class period, which totaled $802,077.08. The expert calculated the number of noncompliant lunches for which no premium wages were paid by comparing the rounded time records for meal periods to the actual time records. For example, the expert would have counted a 23-minute lunch starting at 11:02 a.m. and ending at 11:25 a.m., recorded on Team Time as a 30-minute lunch starting at 11:00 a.m. and ending at 11:30 a.m., as an uncompensated short lunch.

AMN filed a cross-motion for summary judgment or, in the alternative, summary adjudication. As to the meal period claim,

AMN contended that it did not have a uniform policy or practice of denying employees compliant meal periods. It also argued that Donohue did not plead in the operative complaint that AMN's rounding policy resulted in meal period violations. AMN submitted the declarations of 40 class members in support of its motion. Thirty of the nurse recruiters stated that they "always" or "usually" took lunches that were at least 30 minutes long. Other recruiters said that they only "sometimes" took 30-minute lunches but that it was their choice to forgo a full lunch on the other days. No declarant stated that a supervisor had tried to discourage him or her from taking a full or timely meal period.

AMN also submitted a declaration from its expert witness, a labor economist and statistician. The expert explained that because AMN's rounding policy sometimes rounded meal period times up and sometimes down, AMN sometimes paid employees for a few extra minutes they did not work and sometimes did not pay them for a few minutes that they did work. Unlike Donohue's expert, AMN's expert did not account for meal period premium wages that would have been paid based on actual meal period times. According to the expert, AMN's practice of rounding meal period times evened out over time and actually resulted in the overcompensation of the class by 85 work hours. The expert also stated that based on the nurse recruiters' actual time punches, the average length of a meal period during the class period was 45.6 minutes.

The trial court granted AMN's motion for summary judgment and denied Donohue's motion for summary adjudication, including on the meal period claim. The court concluded there was insufficient evidence that AMN had a policy or practice of denying employees compliant meal periods. According to the court, AMN's meal period policy complied with

California law, and its practice of rounding the time punches for meal periods was proper. The court said that even if no case has ever applied rounding to meal periods, "the rationale behind allowing rounding for work time would be the same for meal break time." According to the court, AMN's rounding policy fairly compensated employees over time, and there was insufficient evidence that supervisors at AMN prevented employees from taking compliant meal periods.

The Court of Appeal affirmed and generally agreed with the trial court's reasoning as to the meal period claim. The court decided that it was proper for AMN to round time punches for meal periods. (*Donohue v. AMN Services, LLC* (2018) 29 Cal.App.5th 1068, 1086–1092 (*Donohue*).) According to the court, the plain text of Labor Code section 512 and Wage Order No. 4, which govern meal periods, does not prohibit rounding. (*Donohue*, at p. 1087.) The court explained that rounding " 'is a practical method for calculating worktime and can be a neutral calculation tool for providing full payment to employees' " and that no case law suggests rounding does not apply to meal periods. (*Id.* at p. 1090.) The court rejected Donohue's argument that rounding meal period time punches " 'would quickly eviscerate employee[s'] statutory right to full 30 minute meal periods.' " (*Ibid.*)

The court also concluded that AMN's rounding policy was neutral on its face and as applied, as required by California law. (*Donohue*, *supra*, 29 Cal.App.5th at pp. 1083–1086.) The court agreed with AMN that the rounding policy fully compensated employees over time and actually resulted in the overcompensation of the class as a whole. (*Id.* at p. 1084.) The court rejected Donohue's argument that the rounding policy did not properly pay employees premium wages for meal period

violations. (*Id.* at p. 1090.) According to the court, "the neutrality of a rounding policy does not depend on the frequency of penalties." (*Ibid.*)

In addition, the court rejected Donohue's argument that time records showing missing, short, or delayed meal periods give rise to a rebuttable presumption of meal period violations. (*Donohue, supra,* 29 Cal.App.5th at pp. 1087–1088.) In the court's view, this rebuttable presumption applies only at the class certification stage, not at the summary judgment stage. (*Ibid.*) Finally, the court considered Donohue's testimony that AMN's office culture discouraged employees from taking full and timely lunches. (*Id.* at p. 1091.) The court noted that Donohue never indicated a meal period violation on Team Time and always certified that her timesheet was accurate. (*Ibid.*) Thus, the court concluded, her testimony was insufficient to raise a triable issue of material fact as to the meal period claim.

We granted review to address two questions of law relating to the meal period claim: whether an employer may properly round time punches for meal periods, and whether time records showing noncompliant meal periods raise a rebuttable presumption of meal period violations.

## II.

We first examine whether the practice of rounding time punches, which was developed for the purpose of calculating wages, can be properly applied to the meal period context. To be clear, the question is not whether AMN's rounding policy resulted in the proper compensation of employees for all time worked. Donohue does not dispute that the rounding policy overcompensated the class by 85 work hours, as AMN's expert concluded, when considering only compensation for time

worked. Instead, the issue is whether AMN's rounding policy resulted in the proper payment of premium wages for meal period violations. AMN's claim that it overpaid the class based on time worked does not address this issue.

AMN, for its part, does not argue that any meal periods rounded to 30 minutes are per se lawful. Rather, it argues that the undisputed evidence shows that no meal period violations occurred for which premium wages were not paid. AMN asserts that this evidence, regardless of its use of rounding, supports judgment on the meal period claim. But because AMN asserted that rounding applies to meal periods as an affirmative defense and because the trial court certified a meal period class on the basis of this question, the issue of rounding is properly before us.

The issue arises solely under state law because the federal Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.) does not require employers to provide meal periods to employees. (*Mitchell v. JCG Industries, Inc.* (7th Cir. 2014) 745 F.3d 837, 840.) In California, "wage and hour claims are today governed by two complementary and occasionally overlapping sources of authority: the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the IWC." (*Brinker, supra,* 53 Cal.4th at p. 1026.) "The IWC is the state agency empowered to promulgate wage orders, which are legislative regulations specifying minimum requirements with respect to wages, hours, and working conditions." (*Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 262, fn. 5 (*ABM Security*).)

"The IWC's wage orders are to be accorded the same dignity as statutes. They are 'presumptively valid' legislative

regulations of the employment relationship [citation], regulations that must be given 'independent effect' separate and apart from any statutory enactments [citation]." (*Brinker, supra,* 53 Cal.4th at p. 1027.) "When construing the Labor Code and wage orders, we adopt the construction that best gives effect to the purpose of the Legislature and the IWC. [Citations.] Time and again, we have characterized that purpose as the protection of employees—particularly given the extent of legislative concern about working conditions, wages, and hours when the Legislature enacted key portions of the Labor Code. [Citations.] In furtherance of that purpose, we liberally construe the Labor Code and wage orders to favor the protection of employees." (*ABM Security, supra,* 2 Cal.5th at p. 262.)

Wage Order No. 4, which applies to professional, clerical, mechanical, and similar occupations, applies to the certified class of AMN nurse recruiters here. (Wage Order No. 4, § 2(O).) This wage order and the relevant statute provide: "No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes . . . . Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked." (Wage Order No. 4, § 11(A); accord, Lab. Code, § 512, subd. (a) ["An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . . An employer shall not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes . . . ."].)

This means that employers must generally provide "a first meal period [of at least 30 minutes] no later than the end of an

employee's fifth hour of work, and a second meal period [of at least 30 minutes] no later than the end of an employee's 10th hour of work." (*Brinker*, *supra*, 53 Cal.4th at p. 1041.) In *Brinker*, we clarified that an "employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so. . . . [¶] . . . [T]he employer is not obligated to police meal breaks and ensure no work thereafter is performed." (*Id.* at p. 1040.) There is no meal period violation if an employee voluntarily chooses to work during a meal period after the employer has relieved the employee of all duty. (*Id.* at pp. 1040–1041.) The voluntariness of an employee's choice matters because "an employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks." (*Id.* at p. 1040.)

If an employer does not provide an employee with a compliant meal period, then the employer must provide the employee with premium pay for the violation. Specifically, the relevant wage order and statute provide: "If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided." (Wage Order No. 4, § 11(B); accord, Lab. Code, § 226.7, subd. (c) ["If an employer fails to provide an employee a meal . . . period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday

that the meal . . . period is not provided."].) Under this provision, even a minor infringement of the meal period triggers the premium pay obligation. In addition to providing premium pay, the employer must compensate the employee for any time worked during the meal period if "it 'knew or reasonably should have known that the worker was working through the authorized meal period.' " (*Brinker*, *supra*, 53 Cal.4th at p. 1040, fn. 19.) To avoid liability, an employer must provide its employees with full and timely meal periods whenever those meal periods are required.

The practice of rounding time punches for meal periods is inconsistent with the purpose of the Labor Code provisions and the IWC wage order. The text of Labor Code section 512 and Wage Order No. 4 sets precise time requirements for meal periods. Each meal period must be "not less than 30 minutes," and no employee shall work "more than five hours per day" or "more than 10 hours per day" without being provided with a meal period. (Lab. Code, § 512, subd. (a); accord, Wage Order No. 4, § 11(A) ["No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes . . . ."]; see *Brinker*, *supra*, 53 Cal.4th at p. 1041.) These provisions speak directly to the calculation of time for meal period purposes.

The precision of the time requirements set out in Labor Code section 512 and Wage Order No. 4 — "not less than 30 minutes" and "five hours per day" or "ten hours per day" — is at odds with the imprecise calculations that rounding involves. The regulatory scheme that encompasses the meal period provisions is concerned with small amounts of time. (*Troester v. Starbucks Corp.* (2018) 5 Cal.5th 829, 844 (*Troester*).) For example, we have "requir[ed] strict adherence to" the Labor

Code's requirement that employees receive two daily 10-minute rest periods and "scrupulously guarded against encroachments on" these periods. (*Ibid.*) The same vigilance is warranted here. Given the relatively short length of a 30-minute meal period, the potential incursion that might result from rounding is significant. (See *Kaanaana v. Barrett Business Services, Inc.* (2018) 29 Cal.App.5th 778, 801 (*Kaanaana*) [" 'On a 30-minute break, time is scarce' " and " '[w]hen time is scarce, minutes count.' "], review granted Feb. 27, 2019, S253458.)

Consider, for example, an employee who is provided with a 21-minute lunch from 12:04 p.m. to 12:25 p.m. Under AMN's timekeeping system, which rounded time punches to the nearest 10-minute increment, the lunch would have been recorded as a 30-minute lunch from 12:00 p.m. to 12:30 p.m. In that scenario, an employee would have lost nine of the 30 minutes — or almost a third of the time — to which he or she was entitled, and Team Time would not have flagged the lunch as a meal period violation. Small rounding errors can amount to a significant infringement on an employee's right to a 30-minute meal period.

The premium pay structure under Labor Code section 226.7 and Wage Order No. 4 confirms that rounding is inappropriate in the meal period context. In general, premium pay serves the dual purposes of compensating employees for their injuries and incentivizing employers to comply with labor standards. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1110 (*Murphy*).) In the meal period context, an employee receives the full amount of premium pay — one additional hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided — regardless of the extent of the violation. (Lab. Code, § 226.7, subd. (c); Wage Order No. 4, § 11(B).) In other words,

whether an employer provides a shortened meal period or no meal period at all, the employee receives one additional hour of pay.

The premise of this approach is that even relatively minor infringements on meal periods can cause substantial burdens to the employee. Forcing employees to work through their meal periods not only causes economic burdens in the form of extra work but also noneconomic burdens on the employees' health, safety, and well-being. (*Murphy*, *supra*, 40 Cal.4th at p. 1113.) Employees denied compliant meal periods "face greater risk of work-related accidents and increased stress" and lose valuable time "free from employer control that is often needed to be able to accomplish important personal tasks." (*Ibid.*) Shortening or delaying a meal period by even a few minutes may exacerbate risks associated with stress or fatigue, especially for workers who are on their feet most of the day or who perform manual labor or repetitive tasks. Further, within a 30-minute timeframe, a few minutes can make a significant difference when it comes to eating an unhurried meal, scheduling a doctor's appointment, giving instructions to a babysitter, refreshing oneself with a cup of coffee, or simply resting before going back to work.

By requiring premium pay for any violation, no matter how minor, the structure makes clear that employers must provide compliant meal periods whenever such a period is triggered. This corroborates the conclusion that rounding is improper here. A premium pay scheme that discourages employers from infringing on meal periods by even a few minutes cannot be reconciled with a policy that counts those minutes as negligible rounding errors.

Legislative history supports this understanding. "Meal and rest periods have long been viewed as part of the remedial worker protection framework. . . . Concerned with the health and welfare of employees, the IWC issued wage orders mandating the provision of meal and rest periods in 1916 and 1932, respectively. . . . The wage orders required meal and rest periods after specified hours of work. The only remedy available to employees, however, was injunctive relief aimed at preventing future abuse. In 2000, due to a lack of employer compliance, the IWC added a pay remedy to the wage orders, providing that employers who fail to provide a meal or rest period 'shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day' that the period is not provided." (*Murphy*, *supra*, 40 Cal.4th at pp. 1105–1106, citations omitted.) Around the same time, the Legislature "wrote into statute various guarantees that previously had been left to the IWC, including meal break guarantees." (*Brinker*, *supra*, 53 Cal.4th at pp. 1037–1038.)

The legislative history indicates that the meal period provisions are not "aimed at protecting or providing employees' wages. Instead, [they are] primarily concerned with ensuring the health and welfare of employees by requiring that employers provide meal . . . periods as mandated by the IWC." (*Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1255.) As Donohue argues, the health and safety concerns underlying these provisions distinguish the meal period context from the wage calculation context, in which the practice of rounding time punches was developed. For purposes of calculating wages, counting slightly fewer minutes one day can be made up by counting a few more minutes another day. But the same is not true for meal periods. Under the applicable statute and wage

order, a shorter or delayed meal period one day cannot be offset by a longer or earlier meal period another day. The premium pay scheme reflects the Legislature's and the IWC's determination that infringements on meal period requirements threaten employees' health and safety whenever they occur (*Murphy*, *supra*, 40 Cal.4th at p. 1113; *Kaanaana*, *supra*, 29 Cal.App.5th at p. 801, rev.gr.), and the scheme was enacted to address inadequate employer compliance (*Murphy*, at pp. 1105–1106). Rounding policies are at odds with the requirement that employers pay the full premium wage for meal period violations. When the actual times that an employee must work during a day reveal a meal period violation, the violation cannot be papered over by rounding.

This understanding also comports with the remedial purpose of the Labor Code and wage orders. "Because the laws authorizing the regulation of wages, hours, and working conditions are remedial in nature, courts construe these provisions liberally, with an eye to promoting the worker protections they were intended to provide." (*Prachasaisoradej v. Ralphs Grocery Co., Inc.* (2007) 42 Cal.4th 217, 227.) As we have explained, rounding is incompatible with promoting strict adherence to the safeguards for workers' health, safety, and well-being that meal periods are intended to provide.

The Court of Appeal here relied on *See's Candy Shops, Inc. v. Superior Court* (2012) 210 Cal.App.4th 889 (*See's Candy I*). *See's Candy I* concluded that employers may use rounded time punches to calculate regular and overtime wages if the rounding policy is neutral on its face and as applied. (*Id.* at p. 907.) That court consulted a federal regulation under the Fair Labor Standards Act of 1938 that addresses rounding practices. (29 C.F.R. § 785.48(b) (2020).) The regulation, first promulgated in

1961, states: "It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." (*Ibid.*)

Federal courts had interpreted the regulation to permit rounding policies as long as they "on average, favor[] neither overpayment nor underpayment" and do not " 'consistently result[] in a failure to pay employees for time worked.' " (*Alonzo v. Maximus, Inc.* (C.D.Cal. 2011) 832 F.Supp.2d 1122, 1126.) Conversely, rounding policies violate the regulation if they "systematically undercompensate employees" (*id.* at pp. 1126–1127), such as when the rounding policy "encompasses only rounding down" (*Eyles v. Uline, Inc.* (N.D.Tex., Sept. 4, 2009, No. 4:08-CV-577-A) 2009 WL 2868447, p. *4).

The *See's Candy I* court observed that the Division of Labor Standards Enforcement (DLSE), the agency that enforces California's labor laws, had adopted the federal regulation in its manual. (*See's Candy I, supra,* 210 Cal.App.4th at p. 902; see *ibid.* [DLSE Manual is not binding but may be considered for its persuasive value].) The court then concluded it was appropriate to adopt the federal regulatory standard: "Assuming a rounding-over-time policy is neutral, both facially and as applied, the practice is proper under California law because its

net effect is to permit employers to efficiently calculate hours worked without imposing any burden on employees." (*See's Candy I*, *supra*, 210 Cal.App.4th at p. 903.) The court observed that employers across the country have long used rounding and it would be unreasonable to prevent California employers from doing the same. (*Ibid.*) The court held that an employer is entitled to use a rounding policy if it "is fair and neutral on its face and 'it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.' " (*Id.* at p. 907.)

The *See's Candy I* court believed this rounding standard is consistent with Labor Code section 204, subdivision (a), which provides: "All wages . . . earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays." According to the court, the focus of section 204 is on the timing of wage payments, not the way those wages are calculated. (*See's Candy I*, *supra*, 210 Cal.App.4th at pp. 904–905.) In addition, the court observed that the phrase "all wages" does not necessarily refer to an amount calculated on the basis of unrounded time punches. (*Id.* at p. 905 ["Fundamentally, the question whether *all* wages have been paid is different from the issue of how an employer calculates the number of hours worked and thus *what wages are owed.* Section 204 does not address the measurement issue."].) Thus, the court concluded, the phrase "all wages" in section 204 does not bar the practice of rounding time punches.

Further, *See's Candy I* held that rounding is consistent with Labor Code section 510, subdivision (a), which provides: "Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek . . . shall be

18

compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." The court said the provision "sets the multiplier for the rate at which '[a]ny' overtime work must be paid" and "has nothing to do with rounding or calculating time." (*See's Candy I*, *supra*, 210 Cal.App.4th at p. 905.) The court also rejected the argument that rounding can never be neutral because California law requires the compensation rate to increase after eight hours of work a day. (*Id.* at pp. 905–906.) Ultimately, the court said, whether California's overtime rules render a rounding policy unfair is a factual, not legal, issue. (*Id.* at p. 906.)

Since *See's Candy I* was decided, state and federal courts have applied its standard to determine whether various rounding policies are valid under California law. (See, e.g., *David v. Queen of Valley Medical Center* (2020) 51 Cal.App.5th 653, 664; *AHMC Healthcare, Inc. v. Superior Court* (2018) 24 Cal.App.5th 1014, 1027–1028; *Utne v. Home Depot U.S.A., Inc.* (2017) (N.D.Cal. Dec. 4, 2017, No. 16-cv-01854-RS) 2017 WL 5991863, pp. *2–*3.) This court has never decided the validity of the rounding standard articulated in *See's Candy I*, and we are not asked to do so here.

But even assuming the validity of *See's Candy I*, a rounding policy in the meal period context does not comport with its neutrality standard. As noted, failing to provide employees with full and timely meal periods burdens their health, safety, and well-being by aggravating risks associated with stress or fatigue. By deeming delayed or shortened meal breaks as "timely" and "complete" when they are not, a rounding policy erodes the health and safety protections that the meal period requirements are intended to achieve. (See *Murphy*, *supra*, 40 Cal.4th at p. 1113.) Moreover, in articulating its standard, *See's*

*Candy I* reasoned that the rounding policy " 'averages out' " and "employees are fully compensated 'over a period of time.' " (*See's Candy I*, *supra*, 210 Cal.App.4th at p. 901.) In the meal period context, however, there is an asymmetry between the treatment of rounded-up minutes (i.e., time not worked that is compensated with regular pay) and the treatment of rounded-down minutes (i.e., time worked that may trigger premium pay).

As noted, under AMN's policy, a 21-minute lunch from 12:04 p.m. to 12:25 p.m. would be recorded as a 30-minute lunch from 12:00 p.m. to 12:30 p.m. Meanwhile, a 38-minute lunch from 11:55 a.m. to 12:33 p.m. would be recorded as a 30-minute lunch from 12:00 p.m. to 12:30 p.m. This means that the rounding policy, while never triggering premium pay for compliant meal periods, does not always trigger premium pay for noncompliant meal periods. The same concern applies to the timing of meal periods; the policy never triggers premium pay for early or on-time meal periods, but it does not always trigger premium pay for meal periods that are improperly delayed.

AMN argues that its rounding policy was neutral over time because it sometimes paid employees for a few extra minutes that they did not work and sometimes did not pay them for a few minutes that they did work. AMN asserts that the policy slightly overcompensated the class as a whole. But this argument does not properly account for the underpayment of premium pay. It is true that in the 38-minute lunch example above, the rounding policy would count the extra eight minutes of lunch as work time and would trigger regular pay for those eight minutes. But in the 21-minute lunch example, the rounding policy does not trigger the "one additional hour of [regular] pay" (Lab. Code, § 226.7, subd. (c); Wage Order No. 4, § 11(B)) that the employee is owed. In this respect, the rounding

policy is not neutral. It never provides employees with premium pay when such pay is not owed, but it does not always trigger premium pay when such pay is owed.

We recognize that rounding was developed as a means of "efficiently calculat[ing] hours worked" and wages owed to employees (*See's Candy I*, *supra*, 210 Cal.App.4th at p. 903) and is useful "in some industries, particularly where time clocks are used" (29 C.F.R. § 785.48(b) (2020)). But technological advances may help employers to track time more precisely, and "employers are in a better position than employees to devise alternatives." (*Troester*, *supra*, 5 Cal.5th at p. 848.) In this case, AMN was already using an electronic timekeeping system, Team Time, that recorded employees' unrounded time punches. The system could have kept track of potentially noncompliant meal periods using those unrounded time punches instead of rounding the punches to the nearest 10-minute increment. As Donohue observes, Team Time actually had to take the extra step of converting the unrounded time punches to rounded ones; it is not clear what efficiencies were gained from this practice. AMN eventually switched to a new timekeeping system that does not round time punches after this lawsuit was filed. As technology continues to evolve, the practical advantages of rounding policies may diminish further.

## III.

We now consider whether time records showing noncompliant meal periods raise a rebuttable presumption of meal period violations at summary judgment. We hold they do.

This rebuttable presumption was first discussed in Justice Werdegar's concurrence in *Brinker*: "Employers covered by Industrial Welfare Commission (IWC) wage order No. 5-2001

(Cal. Code Regs., tit. 8, § 11050) have an obligation both to relieve their employees for at least one meal period for shifts over five hours (*id.*, subd. 11(A)) *and* to record having done so (*id.*, subd. 7(A)(3) ['Meal periods . . . shall also be recorded.']).  If an employer's records show no meal period for a given shift over five hours, a rebuttable presumption arises that the employee was not relieved of duty and no meal period was provided.  This is consistent with the policy underlying the meal period recording requirement, which was inserted in the IWC's various wage orders to permit enforcement.  (See, e.g., IWC board for wage order No. 7-63 meeting mins. (Dec. 14–15, 1966) pp. 4–5 [rejecting proposal to eliminate the meal period recording requirement because 'without the recording of all in-and-out time, including meal periods, the enforcement staff would be unable to adequately investigate and enforce' a wage order's meal period provisions].)  An employer's assertion that it did relieve the employee of duty, but the employee waived the opportunity to have a work-free break, is not an element that a plaintiff must disprove as part of the plaintiff's case-in-chief.  Rather, . . . the assertion is an affirmative defense, and thus the burden is on the employer, as the party asserting waiver, to plead and prove it." (*Brinker, supra*, 53 Cal.4th at pp. 1052–1053 (conc. opn. of Werdegar, J.).)

Justice Werdegar added: "As the Division of Labor Standards Enforcement (DLSE) has explained, even under the less restrictive wage order applicable to agricultural employees, if 'a meal period is not taken by the employee, the burden is on the employer to show that the agricultural employee had been advised of his or her legal right to take a meal period and has knowingly and voluntarily decided not to take the meal period. Again, we emphasize, the burden is on the employer.'  (Dept.

Industrial Relations, DLSE Opn. Letter No. 2003.08.13 (Aug. 13, 2003) p. 2 [interpreting IWC wage order No. 14 (Cal. Code Regs., tit. 8, § 11140)].)  To place the burden elsewhere would offer an employer an incentive to avoid its recording duty and a potential windfall from the failure to record meal periods.  Both the United States Supreme Court and the courts of this state have rejected such an approach.  (See *Anderson v. Mt. Clemens Pottery Co.* (1946) 328 U.S. 680, 686–688 [where an employer is subject to a recordkeeping requirement, the burden shifts to that employer to rebut employee proof of monies owed once a prima facie case has been made]; *Ghazaryan v. Diva Limousine, Ltd.* (2008) 169 Cal.App.4th 1524, 1536, fn. 11 [refusing to allow an employer to use any shortcomings in its records to resist employee wage claims]; *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, 961 [' "[W]here the employer has failed to keep records required by statute, the consequences for such failure should fall on the employer, not the employee." '].)" (*Brinker, supra,* 53 Cal.4th at p. 1053, fn. 1 (conc. opn. of Werdegar, J.).)

The term "waiver," as Justice Werdegar used it, should not be confused with the "waived" meal period that Labor Code section 512, subdivision (a), authorizes only under limited circumstances.  We understand an employee's "waiver" in this context in the colloquial sense that the employee chose to work when he or she was not required.  We do not suggest that employees have the unilateral option — without regard for the waiver requirements in Labor Code section 512, subdivision (a) — to waive their employer's obligation to relieve them from duty and from employer control for a 30-minute meal period within the required timeframe.  (See *Brinker, supra,* 53 Cal.4th at pp. 1039–1040 & fn. 19.)

After *Brinker*, various Courts of Appeal have cited approvingly to Justice Werdegar's analysis of the rebuttable presumption issue. (See, e.g., *Carrington v. Starbucks Corp.* (2018) 30 Cal.App.5th 504, 527; *ABM Industries Overtime Cases* (2017) 19 Cal.App.5th 277, 311; *Lubin v. Wackenhut Corp.* (2016) 5 Cal.App.5th 926, 951; *Safeway, Inc. v. Superior Court* (2015) 238 Cal.App.4th 1138, 1159–1160; *Bradley v. Networkers Internat., LLC* (2012) 211 Cal.App.4th 1129, 1144–1145.) We now adopt her discussion of the rebuttable presumption in full.

As Justice Werdegar explained, an employer's assertion that an employee waived a meal period "is not an element that a plaintiff must disprove as part of the plaintiff's case-in-chief." (*Brinker*, *supra*, 53 Cal.4th at p. 1053 (conc. opn. of Werdegar, J.).) Instead, the assertion is "an affirmative defense," and "the burden is on the employer, as the party asserting waiver, to plead and prove it." (*Ibid.*) The "plaintiff's case-in-chief" and the "affirmative defense" refer to the merits of the case. Contrary to AMN's argument, the presumption goes to the question of liability and applies at the summary judgment stage, not just at the class certification stage.

Moreover, AMN is incorrect that the presumption applies only to records showing missed meal periods; the presumption applies to records showing short and delayed meal periods as well. Providing employees with short or delayed meal periods is just as much a violation of the meal period provisions as failing to provide employees with a meal period at all.

The rationale underlying the rebuttable presumption supports these conclusions. The presumption derives from an employer's duty to maintain accurate records of meal periods. (*Brinker*, *supra*, 53 Cal.4th at p. 1053 (conc. opn. of Werdegar,

J.); Wage Order No. 4, § 7(A)(3) ["Every employer shall keep accurate information with respect to each employee . . . . [¶] . . . [¶] . . . Meal periods . . . shall also be recorded."].) It is important that employers keep accurate records so that enforcement agencies can " 'adequately investigate and enforce' a wage order's meal period provisions." (*Brinker*, at p. 1053 (conc. opn. of Werdegar, J.).) Because time records are required to be accurate, it makes sense to apply a rebuttable presumption of liability when records show noncompliant meal periods. If the records are accurate, then the records reflect an employer's true liability; applying the presumption would not adversely affect an employer that has complied with meal period requirements and has maintained accurate records. If the records are incomplete or inaccurate — for example, the records do not clearly indicate whether the employee chose to work during meal periods despite bona fide relief from duty — then the employer can offer evidence to rebut the presumption. It is appropriate to place the burden on the employer to plead and prove, as an affirmative defense, that it genuinely relieved employees from duty during meal periods. (*Ibid.*) "To place the burden elsewhere would offer an employer an incentive to avoid its recording duty and a potential windfall from the failure to record meal periods." (*Id.* at p. 1053, fn. 1.) " ' "[W]here the employer has failed to keep records required by statute, the consequences for such failure should fall on the employer, not the employee." ' " (*Ibid.*)

In addition, we reject AMN's argument that applying the presumption at the summary judgment stage would eviscerate the rule that employers need not police meal periods. In *Brinker*, we said that an "employer satisfies [meal period] obligation[s] if it relieves its employees of all duty, relinquishes

control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so. . . . [¶] . . . [T]he employer is not obligated to police meal breaks and ensure no work thereafter is performed. Bona fide relief from duty and the relinquishing of control satisfies the employer's obligations, and work by a relieved employee during a meal break does not thereby place the employer in violation of its obligations and create liability for premium pay . . . ." (*Brinker*, *supra*, 53 Cal.4th at pp. 1040–1041.) In AMN's view, applying the presumption at the summary judgment stage means that time records showing missed, short, or delayed meal periods create "automatic liability" for employers. According to AMN, this would leave employers with two options for avoiding liability: Employers could monitor every meal period and ensure no work is performed, or employers could eliminate flexible meal period policies and punish employees for choosing to work during scheduled meal periods. AMN says both options are inconsistent with *Brinker*, which does not require employers to police meal periods and allows employees to voluntarily work during meal periods.

AMN misunderstands how the rebuttable presumption operates at the summary judgment stage. Applying the presumption does not mean that time records showing missed, short, or delayed meal periods result in "automatic liability" for employers. If time records show missed, short, or delayed meal periods with no indication of proper compensation, then a rebuttable presumption arises. Employers can rebut the presumption by presenting evidence that employees were compensated for noncompliant meal periods or that they had in fact been provided compliant meal periods during which they

chose to work. "Representative testimony, surveys, and statistical analysis," along with other types of evidence, "are available as tools to render manageable determinations of the extent of liability." (*Brinker*, *supra*, 53 Cal.4th at p. 1054 (conc. opn. of Werdegar, J.).) Altogether, this evidence presented at summary judgment may reveal that there are no triable issues of material fact. The rebuttable presumption does not require employers to police meal periods. Instead, it requires employers to give employees a mechanism for recording their meal periods and to ensure that employees use the mechanism properly.

The court in *Silva v. See's Candy Shops, Inc.* (2016) 7 Cal.App.5th 235, 253–254 (*See's Candy II*) concluded that the rebuttable presumption is inapplicable when reviewing a motion for summary judgment as opposed to a motion for class certification. Similarly, the court in *Serrano v. Aerotek, Inc.* (2018) 21 Cal.App.5th 773 "specifically reject[ed] [the plaintiff's] contention that 'time records show[ing] late and missed meal periods creat[ed] a presumption of violations,'" even though that plaintiff's time records had shown "that on several days on which she worked more than six hours, she took her meal breaks more than five hours after beginning work or, in a couple of instances, did not take a meal break at all." (*Id.* at pp. 781, 778.) We disapprove *Silva v. See's Candy Shops, Inc.*, *supra*, 7 Cal.App.5th 235, and *Serrano v. Aerotek, Inc.*, *supra*, 21 Cal.App.5th 773, to the extent they are inconsistent with this opinion.

We reiterate the rules set forth in *Brinker*: An employer is liable only if it does not provide an employee with the opportunity to take a compliant meal period. The employer is not liable if the employee chooses to take a short or delayed meal period or no meal period at all. The employer is not required to

police meal periods to make sure no work is performed. Instead, the employer's duty is to ensure that it provides the employee with bona fide relief from duty and that this is accurately reflected in the employer's time records. Otherwise, the employer must pay the employee premium wages for any noncompliant meal period. (See *Brinker*, *supra*, 53 Cal.4th at pp. 1040–1041.) If time records show noncompliant meal periods, then a rebuttable presumption of liability arises. This presumption applies at the summary judgment stage, and the employer may rebut the presumption with evidence of bona fide relief from duty or proper compensation. Employers may use a timekeeping system like Team Time to track meal period violations as long as the system does not round time punches. Team Time included a dropdown menu for employees to indicate whether they were provided a compliant meal period but chose to work, and the system triggered premium pay for any missed, short, or delayed meal periods due to the employer's noncompliance. Thus, Team Time would have ensured accurate tracking of meal period violations if it had simply omitted rounding.

## IV.

We now apply our holdings to the facts of this case. We conclude that AMN improperly used rounded time punches to track potentially noncompliant meal periods. Before September 2012, when Team Time records showed a missed meal period or a meal period that was shorter than 30 minutes or taken after five hours of work, AMN assumed a meal period violation and paid the employee a premium wage. This system may have resulted in some overcompensation because AMN gave employees premium pay regardless of whether they voluntarily chose to work during an off-duty meal period. But this system

did not properly account for meal periods that were short or delayed based on actual time punches but did not appear as short or delayed under the rounding policy. AMN would be liable for premium pay for any instances in which employees did not voluntarily choose to shorten or delay those meal periods.

After September 2012, when an employee recorded a missed, short, or delayed meal period, a dropdown menu appeared on Team Time. The dropdown menu prompted the employee to choose one of three options: (1) "I was provided an opportunity to take a 30 min break before the end of my 5th hour of work but chose not to"; (2) "I was provided an opportunity to take a 30 min break before the end of my 5th hour of work but chose to take a shorter/later break"; (3) "I was not provided an opportunity to take a 30 min break before the end of my 5th hour of work." This system also did not properly account for meal periods that were short or delayed based on unrounded as opposed to rounded time punches. The dropdown menu did not appear for such meal periods. If any of those meal periods were not voluntarily shortened or delayed, then AMN would be liable for premium pay.

The Court of Appeal reached the opposite conclusion as to the rounding policy before and after September 2012 and ruled in favor of AMN. We reverse the Court of Appeal's judgment as to the meal period claim and remand with directions to remand the matter to the trial court to permit either party to file a new summary adjudication motion as to the meal period claim. (See *TRB Investments*, *supra*, 40 Cal.4th at pp. 23, 31–32.) Because the parties did not have the benefit of this decision when litigating the defendant's summary judgment motion and the plaintiff's summary adjudication motion, they should now be afforded another opportunity to present relevant evidence

concerning AMN's compliance with *Brinker*. As to the meal periods that are short or delayed based on unrounded time punches and for which no premium wages were paid, did the employees voluntarily choose to take short or delayed meal periods? On remand, the parties will have the opportunity to present evidence bearing on this question.

We provide some guidance on how the rebuttable presumption should be applied on remand in light of the usual summary adjudication standards. According to Donohue's expert witness, AMN's time records showed 40,110 short meal periods and 6,651 delayed meal periods for which premium wages were not paid; these meal periods did not show up as short or delayed in AMN's timekeeping system because of rounding. The introduction of these time records by either party would trigger the rebuttable presumption. If AMN renews its motion for summary adjudication, it must satisfy the initial burden of production and make a prima facie showing that "one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) To satisfy this burden, AMN could try to establish the defense that it genuinely relieved employees from duty during meal periods. Specifically, to rebut the presumption of noncompliance arising from the time records, AMN would need to provide evidence that employees voluntarily chose to work during off-duty meal periods that appear in time records to be short or delayed based on unrounded time punches. If AMN satisfies this burden, then the burden of production shifts to Donohue "to show that a triable issue of one or more material facts exists as to the cause of action or a defense." (*Ibid.*) But the ultimate burden of persuasion remains with the defendant to show that no genuine

issue of material fact exists and that it is entitled to judgment as a matter of law.

Conversely, when a plaintiff moves for summary adjudication, the plaintiff meets "his or her burden of showing that there is no defense to a cause of action" if the plaintiff "prove[s] each element of the cause of action entitling the party to judgment on the cause of action." (Code Civ. Proc., § 437c, subd. (p)(1).) Donohue can satisfy that burden by using time records to raise a rebuttable presumption of meal period violations. Once the plaintiff meets that burden, the burden shifts to the defendant "to show that a triable issue of one or more material facts exists as to the cause of action or a defense." (*Ibid.*) But the plaintiff bears the ultimate burden of persuasion to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. The parties may present new evidence and arguments to address these issues on remand.

According to AMN, it has already established that the time records do not raise a rebuttable presumption of meal period violations. AMN argues that Donohue never used Team Time's dropdown menu to indicate that she was not provided with a compliant meal period, which suggests that she was never denied a compliant meal period. But because the dropdown menu was triggered by rounded time punches, this evidence does not encompass all meal periods that were short or delayed based on actual time punches. Thus, AMN cannot rely on this evidence to prove that there were no meal period violations.

AMN also contends that the biweekly certifications signed by Donohue and other class members show that there were no

meal period violations. Those certifications stated: "I was provided the opportunity to take all meal breaks to which I was entitled, or, if not, I have reported on this timesheet that I was not provided the opportunity to take all such meal breaks." Donohue argues that AMN cannot rely on the certifications to prove that there were no meal period violations. Because the Team Time dropdown menu was triggered by rounded time punches, the system did not flag meal periods that were short or delayed based on unrounded as opposed to rounded time punches. As a result, Donohue contends, employees would not have known about the potentially noncompliant meal periods that Team Time did not flag unless they kept their own time records. According to Donohue, Team Time thus led to the systematic underreporting of noncompliant meal periods and caused the biweekly certifications to be inaccurate. In addition, Donohue argues that the significance of the certifications should be discounted because employees had to sign them to get paid.

We leave these issues for the parties and the trial court to address on remand. We note that if, as Donohue contends, employees would not have known about potentially noncompliant meal periods that Team Time did not flag unless they kept their own time records, then the certifications would be inaccurate and cannot be used to prove that there were no meal period violations. It is the employer's duty to maintain accurate time records; the law does not expect or require employees to keep their own time records to uncover potential meal period violations. (Wage Order No. 4, § 7(A)(3).)

## CONCLUSION

We reverse the judgment of the Court of Appeal with directions to remand to the trial court for further proceedings consistent with this opinion.


**LIU, J.**


**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**
**HOFFSTADT, J.**[*]

---

[*] Associate Justice of the Court of Appeal, Second Appellate District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Donohue v. AMN Services, LLC

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 29 Cal.App.5th 1068
**Rehearing Granted**


_____

**Opinion No.** S253677
**Date Filed:**  February 25, 2021

_____

**Court:**  Superior
**County:**  San Diego
**Judge:**  Joel M. Pressman


_____

**Counsel:**

Sullivan Law Group, William B. Sullivan, Eric K. Yaeckel, Clint S. Engleson; Niddrie Addams Fuller Singh and Rupa G. Singh for Plaintiff and Appellant.

Cohelan Khoury & Singer and Michael D. Singer for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiff and Appellant.

H. Scott Leviant and Dennis F. Moss for Moon & Yang, APC, Clients of Moon & Yang, APC, and Moss Bollinger LLP as Amici Curiae on behalf of Plaintiff and Appellant.

DLA Piper, Mary C. Dollarhide and Betsey Boutelle for Defendant and Respondent.

Jones Day, George S. Howard, Cindi L. Ritchey and Raymond W. Duer for Employers Group and California Employment Law Council as Amici Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

William B. Sullivan
Sullivan Law Group, APC
2330 Third Avenue
San Diego, CA 92101
(619) 702-6760

Eric K. Yaeckel
Sullivan Law Group, APC
2330 Third Avenue
San Diego, CA 92101
(619) 702-6760

Mary Dollarhide
DLA Piper LLP (US)
4365 Executive Drive, Suite 1100
San Diego, CA 92121
(858) 677-1400