Filed 10/21/24  Cueva v. Millennium Products CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| BLANCA CUEVA et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>MILLENNIUM PRODUCTS, INC.,<br><br>    Defendant and Respondent. | B323975<br><br>(Los Angeles County<br>Super. Ct. No. BC662114) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephanie M. Bowick, Judge.  Affirmed.

Law Offices of David R. Greifinger, David R. Greifinger and Calvin A. Marshall, for Plaintiffs and Appellants.

Proskauer Rose, Steven J. Pearlman and Jonathan P. Slowik; Attwood Gregg, Jessica C. Gregg and Joel P. Kelly for Defendant and Respondent.

_____

Plaintiffs Blanca Cueva, Kelyn Vargas, and Antonio Escobar Fuentes appeal from a judgment in favor of their former employer, Millennium Products, Inc. (Millennium), in an action alleging wage-and-hour and other Labor Code violations.

Plaintiffs raise the following contentions on appeal: 1) The time limits the trial court imposed on presentation of evidence improperly prohibited plaintiffs from cross-examining all of Millennium's witnesses; 2) the court erred by not shifting the burden of proof to Millennium when Millennium failed to produce plaintiffs' time records and wage statements in discovery; 3) substantial evidence did not support the court's finding that Millennium provided plaintiffs with wage statements along with their paychecks, or that Millennium paid plaintiffs for time spent standing in line before work. In their reply brief, plaintiffs additionally argue the court's findings in favor of Millennium on overtime, break periods, and payment of wages upon termination are not supported by substantial evidence.

We reject these contentions. Plaintiffs forfeited their challenge to the time limits because their trial counsel agreed to the time limits and never objected or requested additional time when the court made clear counsel was running out of time to cross-examine some defense witnesses. Any error in not shifting the burden of proof was harmless, because the court made clear in its statement of decision it would rule in favor of Millennium even had the burden shifted. Substantial evidence, primarily the testimony of Millennium's chief executive officer and former chief operating officer, supported the findings Millennium had provided wage statements and paid employees for time standing in line. The arguments plaintiffs raise for the first time in reply are forfeited.

2

Accordingly, we affirm the judgment.

## BACKGROUND

### 1. *Complaint and trial*

Millennium, today known as GT's Living Foods, manufactures and bottles the beverage kombucha. Plaintiff Cueva testified she worked for Millennium from September 8, 2009 to April 12, 2013. Plaintiff Fuentes, Cueva's ex-husband, testified he worked for Millennium from September 1, 2009 to around September 11, 2011. Plaintiff Vargas testified she worked for Millennium from April 28, 2011 to February 26, 2013. All were hourly employees.

On May 22, 2017, plaintiffs filed a complaint against Millennium asserting causes of action for failure to pay overtime compensation, failure to provide meal and rest periods, failure to provide wage statements, failure to pay minimum wage, failure to pay wages upon termination of employment, failure to provide adequate seating, and unfair competition.[1] Plaintiffs later dismissed the cause of action for failure to provide adequate seating.

The court conducted an eight-day bench trial. The three plaintiffs testified, and also called as witnesses their former coworker Alma Mateos, expert witness Erik Lietzow, and Millennium's founder and chief executive officer George Thomas "G.T." Dave. Millennium called as witnesses its former chief operating officer Ramon Canek and three current employees,

---

[1] The complaint also listed as plaintiffs Geovanny Cortez, Maria Lara, and Mayra Blanco, all of whom settled their claims with Millennium and are not party to this appeal.

3

Walter Lozano, Harim Cantillano, and Levis Emiezer Peralta Cantillano. Lozano, Cantillano, and Peralta Cantillano began working at Millennium in 2012.

We briefly summarize the evidence relevant to this appeal.

### a. Overtime

Cueva testified she worked five days a week, with a shift beginning at either 4:00 a.m. or 5:30 a.m. and ending at 11:00 p.m. After an injury, her shift shortened to 8:00 a.m. to 4:30 p.m. for several months in 2011 and 2012, after which she returned to working 4:00 a.m. to 11:00 p.m. Fuentes similarly testified his shifts would start at either 4:00 a.m. or 5:30 a.m. and end at 11:00 p.m. Vargas testified her shifts began at 3:00 or 4:00 a.m. and ended between 9:30 and 10:00 p.m. Mateos testified her work start times varied between 3:00 and 6:00 a.m., and her shifts ended at 6:00 or 7:00 p.m.

Dave and Canek testified that employees were never required to work more than eight hours in a day. Lozano, Cantillano, and Peralta Cantillano all testified they usually worked eight hours a day. Cantillano and Peralta Cantillano testified that when they worked overtime, they were paid time-and-a-half.

A workers' compensation form signed by Cueva in May 2013 indicated she worked 40 hours a week.

### b. Rest and meal breaks

The plaintiffs all testified they were allowed a 25-minute break every morning at 10:30 a.m., and then a 25-minute lunch break, with no other breaks during the workday. Mateos testified she received only a lunch break and one other break. She was not sure if the lunch break was shorter than 30 minutes.

4

Dave testified Millennium provided employees with two meal breaks for breakfast and lunch, and two rest periods. The rest breaks initially were 10 minutes long, but later Millennium extended them to 15 minutes.

Canek testified employees would take a 10- or 15-minute break about an hour and a half after work began. There was a 30-minute lunch break around 11:00 a.m. Later in the day there was another 30-minute break and another 10- or 15-minute break.

Lozano testified he had a breakfast break at around 10:00 a.m. every day for "25, 30 minutes." There was a second break for lunch for "about 30 minutes." Employees could take two additional breaks at any time for 10 or 15 minutes. Cantillano testified there were two 10-minute breaks and a 30-minute break each day. Peralta Cantillano testified similarly to Cantillano, but said the rest breaks were 10 to 15 minutes long.

### c. Lining up at the start of the workday

Cueva, Fuentes, and Mateos testified Millennium required them to line up outside the work facility 15 minutes before the start of their shift. Vargas similarly testified she had to line up before her shift started.

Dave testified that although theoretically an employee could line up before the facility door opened, employees were not required to come in before the start of their shift.[2] Dave further

---

[2] Dave's exact testimony was, "Somebody came in at 7:30 even though the start time is 8 o'clock, and they stood by the door? You know, yes, potentially, they were standing by the door;

testified that when the facility door opened at the start of the work day, all employees were documented on a time sheet as starting work at that time, even if, because of the check-in line, some employees did not actually enter the facility until a few minutes later.  Canek similarly stated that when he opened the door he would clock in the first employee, "and it was the same time for everybody."  Later, when asked how the time was reported for the first employee versus the last employee to enter, he stated, "It was the same for both, whether you were the first or the last."  "The first person always started."

Lozano testified employees would form a line at the beginning of work for Canek to check off on a list who had arrived.  Cantillano testified the employees would line up inside the facility when work began for Canek to write down who had arrived and when.  Peralta Cantillano similarly testified employees would line up for Canek to document their arrival.

### d.    Wage statements

Cueva testified Millennium sometimes paid her in cash, sometimes by check, and she did not start receiving wage statements with her paychecks until over a year into her employment.  Fuentes and Mateos testified they were sometimes paid in cash.  Vargas testified she was sometimes paid in cash and she did not start receiving paystubs with her paychecks until she had been employed for about six months.

Dave and Canek denied paying employees in cash.  Dave testified Millennium provided wage statements to plaintiffs via

and they weren't clocked in.  But they weren't working.  They weren't scheduled to come in [until] 8:00.  It's the same circumstance if somebody sits in their car."

6

payroll provider ADP, who attached wage statements to plaintiffs' paychecks. Lozano and Cantillano testified they were never paid in cash.

Although Millennium produced plaintiffs' payroll records from ADP, Millennium does not dispute that the produced records only cover a portion of each plaintiff's period of employment. Cueva's records date back to January 2011, Fuentes' records date back to April 2011, and Vargas' records date back to September 2011. Dave testified there had been data loss when Millennium switched from one ADP system to another in 2014.

## 2. *Statement of decision and judgment*

The trial court issued a statement of decision in favor of Millennium on May 25, 2022. The court found "that Plaintiffs and Plaintiffs' witnesses were not credible and were often either impeached on cross-examination and/or contradicted themselves during their testimony. Plaintiffs' testimony was not credible regarding the excessive number of hours they claimed to have worked each day and the lack of breaks. The Court also found each Plaintiff's testimony regarding payment in cash not credible. The testimony of Plaintiffs was unreliable and often appeared to be rehearsed because they were identical in many respects. On the other hand, the Court found Defendant's witnesses credible."

The court found, inter alia, that Millennium had provided plaintiffs with 30-minute uninterrupted meal periods and 10- to 15-minute uninterrupted break periods. The court further found plaintiffs worked eight hours a day, 40 hours a week, and did not work overtime during the relevant time period. The court found ADP provided paystubs indicating the hours worked.

The court found insufficient evidence that Millennium had a custom and practice of not providing compliant meal periods, noting, "Plaintiffs never reported a meal period violation and each always certified that their timesheets were accurate. Plaintiffs never complained to their supervisors regarding meal period violations or improper shortening of their meal periods." Thus, "there was no basis to list any meal and rest break premium hours on the wage statements. The Court finds no wage statement violations under Labor Code section 226 [requiring employers to provide wage statements to employees]."

The court found, "Plaintiffs failed to meet their burden of proving that they performed overtime work" or "performed work for which they were not paid. [¶] Notwithstanding the failure to shift the burden to Defendant, the Court finds that Defendant has submitted sufficient admissible evidence that it complied with its obligations under the law."

The court entered judgment in favor of Millennium. Plaintiffs timely appealed.

## STANDARD OF REVIEW

"On appeal from a judgment based on a statement of decision after a bench trial, we review the trial court's conclusions of law de novo and its findings of fact for substantial evidence. [Citation.] Under the deferential substantial evidence standard of review, we 'liberally construe[ ]' findings of fact 'to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings.' [Citation.] 'We may not reweigh the evidence and are bound by the trial court's credibility determinations.' [Citation.]" (*McPherson v. EF Intercultural Foundation, Inc.* (2020)

47 Cal.App.5th 243, 257 (*McPherson*).) "The testimony of a single witness may be sufficient to constitute substantial evidence." (*Lui v. City and County of San Francisco* (2012) 211 Cal.App.4th 962, 969.)

## DISCUSSION

## A. Plaintiffs Have Forfeited Their Contention They Were Denied an Opportunity To Cross-Examine Certain Defense Witnesses

Plaintiffs argue the court denied them due process by not allowing cross-examination of Millennium's three employee witnesses, Lozano, Cantillano, and Peralta Cantillano. They have forfeited this challenge for failure to raise it below.

### 1. *Additional background*

#### a. The trial court imposes time limits

Before trial, the parties submitted a joint witness list identifying 12 witnesses for plaintiffs and 10 witnesses for Millennium. For each witness, the parties provided a time estimate for direct examination, a separate time estimate for cross-examination, and another estimate for redirect examination. The total time estimate for all witnesses was 77 hours.

The trial court ordered the parties to file a revised joint witness list with time estimates totaling no more than 25 hours, consistent with what the parties estimated would be a five-day trial. The parties did not do so. Accordingly, on the first day of trial the court stated, "I'm going to just give you time estimates. We'll just use the witness list that you have. The parties can use however much time they want per witness, eliminate a witness—

9

I'm going to go off the old witness list, and you just tell me who is going to come up next. And you can either save your witness time for that person or go less than that witness time estimate, but you're going [to] get a grand total."

The court continued, "So I'm going to give plaintiff eleven hours for your opening side of the case. [¶] Defense will get eleven hours for your side of the case. [¶] And then we'll find out from plaintiff if there's any need for rebuttal. [¶] And with that, we'll add up to approximately [a] five-day court trial. We may have some extra time to talk about closing argument, et cetera."

The court continued, "And you can use your time as you will. I'll keep track. And then I'll give you warnings that, okay, you're getting close to your end, or tell you as you go along, perhaps, how much time you've used for you to keep track. But I'll let you use your time as you will."

Plaintiff's counsel stated, "That's fine," and defense counsel agreed to the plan as well.

### b.    Colloquies regarding time usage

During plaintiffs' direct examination of Dave on the first day of trial, the court stated to plaintiffs' counsel, "I want to let you know, Mr. Ozzello, we've been going quite a while with this witness. The original estimate on the old witnesses list said only 2.5 hours." Plaintiffs' counsel responded, "I understand, Your Honor. I'll work with my 11," referring to the 11 hours to which the court had limited him.

On the fourth day of trial, plaintiffs agreed to allow Millennium to call Canek out of order, before plaintiffs had finished calling all their witnesses. During plaintiffs' cross-examination of Canek, the court inquired whether plaintiff's counsel would finish by noon, and plaintiffs' counsel stated he

10

would not.  The court stated, "Okay.  Just asking.  I want you to watch your time, Mr. Ozzello.  I'm just reminding you.  I haven't had the chance to add up your time, but you're getting close." Plaintiff's counsel proceeded with cross-examination without comment.

Later that same day, the court indicated it had added up the parties' time usage—plaintiffs had used eight hours and 45 minutes, and Millennium had used four hours and 15 minutes. Counsel did not comment and the trial proceeded.

The next day, the fifth day of trial, plaintiffs' counsel informed the court he intended to call additional witnesses.  The court stated, "Here's the thing, I haven't had a chance to finish tabulating, but as of yesterday, I gave Mr. Ozzello his time. What might end up happening is you won't get any cross-examination time when defense finishes calling his witnesses.  As I said, I gave you your amount of time, carving out rebuttal as a separate.  So I will have a tabulation by tomorrow morning, but I have to admit, you're probably not going to get any time when it come to defense putting on their witnesses in their case in terms of cross-exam."

Plaintiffs' counsel responded, "If Your Honor wants to make that order, that's fine."

The court then stated, "I'm not making an order, Mr. Ozzello.  My order was in the beginning that, because the parties didn't give me a witness list revised that had been ordered, I went ahead and just gave you time based on your estimate of a five-day trial, so to speak.  I divided the time up and gave you hours to use as you wish.  You can use the hours on one person or divide it up, and it's up to you to keep track of your

11

time and figure out how you want to use your time and how and where."

The court continued, "I told you, when the time is up, I will tell you time is up. I gave you an update yesterday of how much time you had, which was under three hours. So I agree with [defense counsel] that you're probably on the edge of using all of your time, and I'm telling you it looks like you probably won't have any time left when they put on their witnesses. I said I would be a little flexible, but if you've now decided to change your strategy, it's for you to decide how to do it."

Plaintiffs' counsel stated he had not changed his strategy, and then turned to another topic of discussion. Shortly thereafter, plaintiffs called Mateos to the stand, and the next day called their expert Lietzow.

###### c. The court precludes plaintiffs from cross-examining Lozano for lack of remaining time

Following Lietzow's testimony, Millennium called Lozano. When defense counsel had completed direct examination, the court stated, "Mr. Ozzello, you've run out of time on cross too. I announced in the beginning the 11 hours included everything."

Plaintiffs' counsel responded, "You're not going to give me an opportunity to cross this witness?"

The court stated, "Mr. Ozzello, when we started this, I broke up the time. And the same time goes for defense. Whenever they cross-examine, I'm documenting that time. So all the time I counted against plaintiffs, not only went for direct, but any other use of time . . . ." The court explained it had not deducted time for colloquies regarding witnesses or objections. Rather, "[i]t was just strictly whenever a witness took the stand,

12

whenever anybody either did direct or cross I counted, and that was how I said in the beginning that that's how we're going to count time. And I said you use your time how you want. [¶] So plaintiff doesn't have any more time to use as part of examination. You will still have time for closing, if that's what the parties decide to do for closing arguments."

The court then invited Millennium to call its next witness. Millennium proceeded to call Cantillano followed by Peralta Cantillano, both of whom the court excused following direct examination, without plaintiffs' counsel cross-examining.

After the trial court issued a tentative statement of decision, plaintiffs filed written objections including, inter alia, "The Court . . . denied Plaintiffs the opportunity to cross examine the three employee witnesses presented by Defendant."

### 2. *Analysis*

Plaintiffs argue the trial court did not give them fair notice that their 11-hour allotment included cross-examination, because when the court first imposed the time limitation the court said the limit applied to plaintiff's "opening side of the case," which plaintiffs contend referred solely to their case-in-chief. Plaintiffs further argue the time limitation was unreasonable because unlike Millennium, most of their witnesses required interpreters, which slowed down the testimony. Plaintiffs also assert, "[I]t was impossible for [plaintiffs] to know the amount of time necessary for cross-examination until Millennium called its witnesses. An informed advance apportionment of time for cross-examination would have been impossible."

Plaintiffs did not raise any of these objections below. The general rule is issues not raised in the trial court cannot be

13

asserted on appeal. (*GoTek Energy, Inc. v. SoCal IP Law Group, LLP* (2016) 3 Cal.App.5th 1240, 1248.) Our Supreme Court explained this rule thusly: " 'The circumstances may involve such intentional acts or acquiescence as to be appropriately classified under the headings of estoppel or waiver . . . . Often, however, the explanation is simply that it is unfair to the trial judge and to the adverse party to take advantage of an error on appeal when it could easily have been corrected at the trial.' [Citation.]" (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184–185, fn. 1, italics omitted.) The rule applies here, where plaintiffs could have, but did not, seek to correct the court's purported errors during trial.

As an initial matter, we are skeptical that plaintiffs' counsel did not understand the trial court's allotment of 11 hours included cross-examination. The parties' original witness list broke down the time estimates into direct, cross, and redirect examination. The court stated it was working off that list when it allotted the 11 hours, thus indicating, at least by implication, that the 11 hours would be broken down in the same manner. The fact that the original witness list provided time estimates for cross-examination also belies plaintiffs' assertion on appeal that such estimates were "impossible."

Assuming arguendo the court's initial allotment of time was ambiguous, the court later clarified that allotment. On the fourth day of trial, during plaintiffs' cross-examination of Canek, the court warned plaintiffs' counsel to watch his time, and that he was getting close to using up his allotment. This warning notified plaintiffs' counsel the court was counting cross-examination time towards the 11-hour allotment.

14

If that was not clear enough, the next day the court expressly stated that if plaintiffs called additional witnesses, they were likely to run out of time and be unable to cross-examine Millennium's witnesses. At that point, there could be no doubt that cross-examination counted towards the 11 hours.

At none of these stages of trial did plaintiffs' counsel say anything to the court to indicate he misunderstood that the time limit included cross-examination. He never objected to the 11-hour time limit. He never asked for an extension of time to cross-examine the defense witnesses. Indeed, when the court warned him that calling additional witnesses might use up his time for cross-examination, he responded, "If Your Honor wants to make that order, that's fine," and proceeded to call additional witnesses.

Plaintiffs argue their counsel's statement should not be interpreted as acquiescence, but rather "made in the heat of argument with the court about the court's disallowing cross-examination." We detect no "heat of argument" from that section of the transcript—plaintiffs' counsel stated he intended to call more witnesses, the court warned him he would use up his cross-examination time, and counsel then said the court could make that order. Regardless, even if we do not interpret that statement as express acquiescence, it does not constitute an objection.

Nor did plaintiffs' counsel object the next day when the court would not allow him to cross-examine Lozano. Counsel asked for cross-examination, the court reminded him of time allocation, and counsel said nothing further. Again, to the extent counsel misunderstood the time allocation to include cross-examination, or otherwise thought the time allocation

15

insufficient, it was incumbent on him to raise it with the court, and he did not.

Plaintiffs contend we should excuse their forfeiture because objection would have been futile. (See *Teacher v. California Western School of Law* (2022) 77 Cal.App.5th 111, 129.) In support, plaintiffs point to a colloquy in which the trial court indicated it would dock their allotted time it they wished to continue arguing a particular issue. In quoting the colloquy, plaintiffs use an ellipsis to suggest the issue they were arguing was the lack of cross-examination. This mischaracterizes the record. Plaintiffs' ellipsis eliminates nearly a page of reporter's transcript, in which it is clear the court and counsel had moved on to another topic, specifically whether the parties could rely on depositions taken in another case.[3] It was that topic on which

---

[3] The colloquy omitted by the ellipsis included the court stating that if plaintiffs called additional witnesses they "probably won't have any time left" for cross-examination, and that if plaintiffs had "now decided to change your strategy, it's for you to decide how to do it." Plaintiffs' counsel stated, "I haven't changed my strategy Your Honor. But let me just put one other thing on the record, and that is that counsel keeps misrepresenting that all of the deposition transcripts in *Mateos* [a separate lawsuit brought by other Millennium employees including plaintiffs' witness Mateos] were agreed that they can be used in this case. That was not the agreement. The agreement was on the record of a deposition of Mr. Dave because they didn't want to keep bringing Mr. Dave back—." The court interrupted: "I don't want to talk about this, Mr. Ozzello, because, I think, I represented to you what I understood the state of this case to be, meaning that you all would have worked out about these deposition transcripts. That's all I'm taking away from any stipulation you might have had, and I thought I said to your

16

the court stated it would dock plaintiffs' time if they continued arguing the point. The court did not state it would dock plaintiffs' time if they argued about the time limitations themselves, and thus the record does not establish such argument would have been futile.

Plaintiffs do not contend their objections to the statement of decision in which they protested the lack of cross-examination preserved the issue for appeal. That objection came after trial had concluded and was untimely.

## B.     Any Failure To Shift the Burden of Proof Was Harmless

Plaintiffs argue Millennium failed to produce time records and wage statements for a portion of their employment period. Plaintiffs claim the trial court therefore should have shifted the burden of proof to Millennium to establish it had complied with overtime and meal and rest break requirements during the periods for which records were missing.

---

credit that I hadn't found any fault on your part in terms of the transcripts. I don't want to hear a lot of argument about what happened in the *Mateos* case. It's what happened in this case. [¶] I don't want to go any further unless you want to use more of your time to argue. I will let you argue as much as you want on this point, but I'm going to dock you time on it. Okay. I haven't been docking anybody's time when it comes to these sidebars and discussions, off the record out of the witnesses' earshot discussions we've been having, trying to be fair to the parties. But if you want me to start doing that, if you want to use some of your time left, Mr. Ozzello, I give you the floor to argue whatever you'd like to do for the record as to anything right now before you call your next witness. You're free to do so."

17

Plaintiffs assert two bases for their burden-shifting argument.  First, courts have held that when an employer has failed to keep "accurate time records of [a plaintiff's] work hours," " 'the consequences for such failure should fall on the employer, not the employee.  In such a situation, imprecise evidence by the employee can provide a sufficient basis for damages.' [Citation.]" (*Furry v. East Bay Publishing, LLC* (2018) 30 Cal.App.5th 1072, 1079 (*Furry*), disapproved on other grounds by *Naranjo v. Spectrum Security Services, Inc.* (2024) 15 Cal.5th 1056.) Specifically, an employee may meet his burden " ' "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." ' [Citation.]"  (*Furry*, at p. 1079.)

Importantly, the framework described in *Furry* does not relieve the plaintiff of the burden of proving injury, that is, proving that the plaintiff " ' "in fact performed work for which he was improperly compensated." ' "  (*Furry*, *supra*, 30 Cal.App.5th at p. 1079.)  Rather, once " 'the *fact* of damage is certain,' " the framework makes it easier for the plaintiff "[t]o prove the *amount* of hours of uncompensated work" using less precise evidence that then shifts the burden to the defendant to counter that evidence. (*Id.* at p. 1080.)

18

The rule in *Furry* does not help plaintiffs here because the trial court found plaintiffs had failed to prove they had performed work for which they were not properly compensated. Having not met the threshold of proving " 'the *fact* of damage,' " plaintiffs could not shift the burden to Millennium to disprove plaintiffs' calculation of "the *amount*" of damages. (*Furry*, *supra*, 30 Cal.App.5th at p. 1080.)

The second basis for plaintiffs' burden-shifting argument is articulated in *Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58, which held that "records showing noncompliant meal periods raise a rebuttable presumption of meal period violations." (*Id.* at p. 61.) "Employers can rebut the presumption by presenting evidence that employees were compensated for noncompliant meal periods or that they had in fact been provided compliant meal periods during which they chose to work. 'Representative testimony, surveys, and statistical analysis,' along with other types of evidence, 'are available as tools to render manageable determinations of the extent of liability.' [Citation.]" (*Id.* at p. 77.)

Assuming arguendo Millennium did not properly record plaintiffs' meal and rest breaks (which Millennium disputes), and therefore the trial court erred by not shifting the burden of proof to Millennium as described in *Donohue*, any such error was harmless. (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108 [reviewing court may not set aside judgment absent prejudicial error].)

Although the court found plaintiffs had "fail[ed] to shift the burden to defendant," the court nonetheless expressly considered whether "Defendant has submitted sufficient admissible evidence that it complied with its obligations under the law," and concluded Millennium had met this burden. The court stated it

19

found Millennium's witnesses credible[4] and plaintiffs and their witnesses not credible, and additionally made findings based on the testimony of Millennium's witnesses, including that Millennium had provided plaintiffs compliant break periods, that plaintiffs did not work overtime, and that Millennium provided paystubs. The court therefore indicated it would rule in favor of Millennium even if the burden had shifted. Remand for further proceedings on this point would be futile.

Plaintiffs argue the trial court misunderstood the proper burden of proof because it found, in support of its ruling in Millennium's favor, that plaintiffs had never complained to supervisors that they were not receiving proper rest and meal breaks. Plaintiffs contend, "Employers are not absolved of their duties to provide complaint [*sic*] meal periods if their employees do not complain." We do not interpret this finding as absolving Millennium of its responsibilities or misunderstanding the law. Rather, the court appeared to be offering an explanation for why it did not find plaintiffs credible when they testified they did not receive proper breaks.

## C. Substantial Evidence Supports the Finding That Plaintiffs Were Paid for Their Time Standing in Line Before Work

Plaintiffs argue it is undisputed they had to stand in line to check in before they started work, and thus they "are entitled to the minimum wage for all time spent standing in line."

---

[4] We reasonably may presume the court counted Dave as one of Millennium's witnesses, although called by plaintiffs as a hostile witness.

20

This argument ignores the testimony of Dave and Canek, both of whom testified Canek clocked all employees in as of the time he checked in the first employee. Even if employees further up the line were not checked in until later, their start time was the same as the first person in line, and thus they were credited for the time spent in line. Dave also testified that no one was required to stand in line before the work facility opened. Dave's and Canek's testimony was substantial evidence to support the trial court's finding that plaintiffs had no uncompensated time. To the extent plaintiffs dispute the veracity or reliability of that testimony, we are bound by the standard of review, and must defer to the trial court's credibility findings. (*McPherson*, *supra*, 47 Cal.App.5th at p. 257.)

## D. Substantial Evidence Supports the Finding That Plaintiffs Were Provided With Wage Statements

Plaintiffs argue "wage statements are non-existent for each [plaintiff] for substantial periods of their employment," and contend they may recover damages for any pay period in which they were not given such statements.

Dave testified that Millennium's payroll provider, ADP, attached paystubs to each paycheck. He explained Millennium's inability to produce in discovery wage statements for the entire period of plaintiffs' employment was due to data loss when Millennium changed systems with ADP. This was substantial evidence supporting the trial court's finding Millennium provided wage statements. Although plaintiffs and their witnesses testified to the contrary, we presume the court did not credit that testimony, having found plaintiffs and their witnesses not credible.

21

Plaintiffs note substantial evidence must be " 'of ponderable legal significance,' 'reasonable in nature, credible, and of solid value' " (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1006), and contend "[a]ny protestation by Millennium that it provided compliant wage statements despite the absence of records" does not meet this test. With this argument, plaintiffs in essence ask us to conclude that Dave's testimony is not credible given the lack of documentary support. Plaintiffs offer no authority that we may reach such a conclusion under the substantial evidence test, which, again, requires us to defer to the credibility determinations of the finder of fact.

## E. Plaintiffs' Have Forfeited Their Remaining Substantial Evidence Arguments for Failure To Raise Them in Their Opening Brief

In their reply brief, plaintiffs argue the trial court's rulings in Millennium's favor as to unpaid overtime, meal and rest break violations, and nonpayment or untimely payment of wages upon termination are not supported by substantial evidence. They did not raise these arguments in their opening appellate brief— plaintiffs summarized the evidence in their statement of facts and identified their operative claims, but did not explain why the court's conclusions were in error. They have thus forfeited these challenges. (*Hurley v. Department of Parks & Recreation* (2018) 20 Cal.App.5th 634, 648, fn. 10.)

## DISPOSITION

The judgment is affirmed.  Millennium Products, Inc. is awarded its costs on appeal.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.

23