Filed 4/22/26  Smith v. Superior Court CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| CANDICE SMITH et al., | B349974 |
| Petitioners, | (Los Angeles County Super. Ct. No. BC639197) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| VOLUNTEERS OF AMERICA OF LOS ANGELES et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS in mandate, William F. Highberger, Judge.  Petition granted in part and denied in part.

Capstone Law, Ryan H. Wu, Melissa Grant, Bevin Allen Pike for Petitioners.

David Lee, Court Counsel, for Respondent.

Wolflick, Khachaturian & Bouayad, Gregory D. Wolflick and Theodore S. Khachaturian for Real Party in Interest Volunteers of America of Los Angeles.

————————————————

In 2016, plaintiffs and petitioners Candice Smith and Elizabeth Grundy filed a class action against their former employer, defendant and real party in interest Volunteers of America of Los Angeles (VOALA), asserting meal and rest period violations and other wage-and-hour claims.  Plaintiffs sought certification of five subclasses.  The trial court certified two subclasses after limiting their scope and denied certification of the three remaining subclasses, all of which related to meal period violations.  The trial court concluded the meal period subclasses lacked commonality because VOALA's affirmative defense of waiver would require individualized proof.

Plaintiffs seek a preemptive writ of mandate.  They contend the trial court's ruling was inconsistent with *Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58 (*Donohue*).  Plaintiffs also assert that the trial court erred in limiting the scope of one of the subclasses.

We grant plaintiffs' petition in part.  We agree that the trial court made an erroneous legal assumption in determining that the mere pleading of waiver as an affirmative defense was

sufficient to show individual issues would predominate as to the meal period subclasses. We deny plaintiffs' petition with respect to the Children's Services Subclass, as substantial evidence supported the trial court's conclusion that certification was proper only as to the locations where the class representatives worked.

## FACTUAL AND PROCEDURAL BACKGROUND

### *VOALA*

VOALA "provides services to homeless individuals, veterans, and young adults." Through its Children's Services division, VOALA also runs Head Start preschool programs and provides other services to families. From 2012 to 2023, VOALA employed over 5,800 hourly workers in California.

Before new employees report to their specific program sites, VOALA's human resources department informs them about the company's policies in the employee handbook, including meal and rest break policies. At all times relevant to these proceedings, the handbook instructed hourly employees to "take an unpaid, 30-minute" off-duty meal period for every shift "of more than five hours." Payroll associate Terry Ng, designated one of VOALA's persons most qualified, testified that VOALA paid a premium if an employee "clocked out late after six hours for lunch, and if they missed a lunch, and if the meal break is less than 29 minutes."

Until 2015, hourly employees at VOALA recorded their hours by writing their clock-in and clock-out times on paper timesheets. Some paper timesheets included a box labeled "Lunch" where employees could report the total hours for which

3

VOALA owed them meal premiums for short, late, or missed meal periods.[1]  Other versions of the timesheet did not include a "Lunch" category.  All paper timesheets required the employee to sign and certify that the recorded hours "fully and accurately report all hours . . . worked during the covered period" and that the employee received all meal periods that he or she "was legally entitled to unless otherwise specified on this form."

In 2015, VOALA switched to the electronic timekeeping system NOVAtime, which allowed employees to clock in and out using their fingerprints.  NOVAtime generated timecards with columns listing clock-in and clock-out times.  Ng testified that an entry in the "Meal" column showed when an employee was owed a meal premium.  He also testified that NOVAtime automatically indicated a meal premium was to be paid if an employee's meal period was "less than 29 minutes after the six-hour [mark] or no meal" was taken.

***Complaint and Motion for Class Certification***

Smith worked at VOALA from 2012 to 2016.  In October 2016, she filed a class action complaint against VOALA and two related entities.  The operative complaint asserted causes of action for unpaid overtime (Lab. Code, §§ 510, 1198);[2] unpaid minimum wages (§§ 1182.12, 1194, 1197, 1197.1, 1198); failure to provide meal periods (§§ 226.7, 512, subd. (a), 1198); failure to

---

[1]     This section of the form also had boxes for overtime, jury duty, and training.

[2]     All further undesignated statutory references are to the Labor Code.

4

provide rest periods (§§ 226, subd. (a), 1198); non-compliant wage statements and failure to maintain payroll records (§§ 226, subd. (a), 1174, subd. (d), 1198); failure to timely pay wages upon termination (§§ 201–203); unreimbursed business expenses (§ 2802); and unlawful business practices under California's Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.).  An amended complaint added Elizabeth Grundy as a named plaintiff.  Grundy is a former VOALA employee who worked as a Head Start teacher from 2012 to 2016.

In July 2024, plaintiffs moved for class certification.  They sought "to represent one class and five subclasses of nearly 6,000 non-exempt, hourly employees" who worked for VOALA any time from October 2012 to the date of certification and who were subject to, among other things, "the underpayment of wages," "failure to provide meal breaks," and "failure to pay meal break premiums when due."  Plaintiffs proposed the following subclasses "predicated on VOALA's companywide, uniform policies and practices":

"• **Underpayment Theory (Underpayment Subclass):** from May 1, 2015 to July 1, 2019, Defendant underpaid its employees by calculating employee pay using clock-in and clock-out times other than an employee['s] actual time punches;

"• **Meal Break Policy Theory (Meal Break Policy Subclass):** Throughout the Class Period, Defendant failed to provide employees with first meal periods before the end of the fifth hour of work as a result of its facially invalid meal period policies and practices;

5

"• **Meal Break Electronic Timesheet Premium Theory (Meal Break Electronic Timekeeping Premium Subclass):** From June 2015 to the present, Defendant failed to pay meal break premiums when required because its electronic timekeeping system is programmed to trigger the payment of a meal period premium when a meal period is less than 29 minutes, missed, or taken later than the fifth hour of work;

"• **Meal Break Handwritten Timesheet Premium Theory (Meal Break Handwritten Timekeeping Premium Subclass):** From October 31, 2012 through May 2015, Defendant failed to pay meal break premiums when required when it used handwritten timesheets either because employees were not instructed on how to indicate on the timesheet that a premium is due, or there was no place on the timesheet to do so;

"• **Failure to Provide Proper Coverage Theory (Children's Services Subclass):** Throughout the Class Period, Defendant failed to provide teachers working in the Children's Services division coverage to release them from the employer's control during meal and rest breaks[.]"

Plaintiffs also sought to certify subclasses under section 203 for waiting time penalties and section 226 for failure to provide accurate wage statements.

Plaintiffs argued each subclass presented common questions of law or fact that would predominate in the litigation. With respect to the Meal Break Policy Subclass, plaintiffs argued that VOALA's meal period policy was facially invalid and liability

6

could therefore be established with common proof. Plaintiffs alleged the policy unlawfully failed to "inform employees of when to take a meal break, i.e., that it must be taken by the end of the fifth hour of work."

Plaintiffs asserted that employees felt "pressured" to take late meal periods. In declarations and deposition testimony, several former VOALA employees stated that they took short or late meal breaks, or skipped them entirely, because they could not otherwise complete their work or because management urged them to complete their assignments without incurring overtime. All declarants stated that VOALA did not pay them premiums for noncompliant meal breaks.

Plaintiffs also contended that common questions existed as to the Meal Break Electronic and Handwritten Timekeeping Premium subclasses. Plaintiffs argued that NOVAtime caused meal period violations because, per Ng's testimony, the system was set up to trigger the payment of premiums only "if an employee 'clocked out late after six hours for lunch, and if they missed a lunch, and if the meal break is less than 29 minutes,' " therefore failing to pay a premium for meal periods that were between 29 and 30 minutes long. Plaintiffs argued that the handwritten timesheets did not ensure employees were paid premiums because VOALA did not include a category for employees to report noncompliant meal periods on those timesheets, or because VOALA included the "Lunch" category without explaining its purpose.

Citing *Donohue*, *supra*, 11 Cal.5th 58, plaintiffs argued that VOALA's time records created a rebuttable presumption of meal

period violations that supported certification of the class. Plaintiffs provided evidence that between approximately 23 and 26 percent of shifts reported in handwritten or electronic timesheets reflected noncompliant meal periods, but premiums were paid less than 11 percent of the time. A certified public accountant analyzed time and payroll records that VOALA produced during discovery. The accountant examined over 22,800 shifts worked by 63 employees between 2012 and 2018. He found that, assuming no meal break waivers were in place, over 5,700 shifts included noncompliant breaks. Assuming valid waivers were in place, over 5,200 shifts still included noncompliant meal breaks. According to the expert, payroll records indicated VOALA only made 560 premium payments to those employees in the same period.

The record also includes handwritten and electronic timesheets and timecards reflecting meal period violations. Most of the time records are from Smith and one other class declarant. They reflect numerous shifts where the employees did not log meal periods or reported late or short meal periods, with no indication on the timesheet that a meal premium was due. The record does not contain corresponding pay statements showing that VOALA paid a premium for those noncompliant meal periods.

Plaintiffs also contended that the Children's Services Subclass presented common questions. Specifically, plaintiffs argued that VOALA did not ensure teachers could take compliant meal or rest breaks without violating state regulations requiring that more than one employee with supervisory responsibility over

8

the children be present in every classroom. Several former employees in teaching positions submitted declarations stating that they could not take fully compliant meal periods and rest breaks because there were not enough staff to provide coverage for their classrooms, particularly when parents picked their children up late after the morning or afternoon sessions. Plaintiffs also argued that the testimony of Felix Cruz, the director of the Children's Services division, established that no location had enough staff authorized to supervise children to ensure teachers could take their breaks.

In opposition to certification, VOALA contended the meal period policy stated in its handbook fully complied with the law. It further argued that its time records did not trigger a rebuttable presumption under *Donohue* because wage statements showed employees were automatically compensated for noncompliant meal periods. VOALA also argued that the meal period subclasses were not susceptible to common proof. It produced wage statements reflecting that meal premiums were paid to some of plaintiffs' declarants at various times during their employment. Some of the former employees who had submitted declarations conceded in deposition testimony that they were not pressured to take noncompliant breaks, or admitted they were not aware that a code on their paychecks indicated VOALA had paid them a premium for noncompliant breaks. Several supervisors provided declarations directly disputing some declarants' claims that they were unable to take meal breaks.

With respect to the Meal Break Handwritten Timekeeping Premium Subclass, VOALA noted that plaintiffs and declarants

had certified on their timesheets that they received timely, full meal periods each shift. VOALA also contended the timesheets allowed plaintiffs to report that a premium was due "by accurately writing the correct clock-in and clock-out times on the time sheets." VOALA maintained that proving liability would require individualized inquiries as to why employees did not take their meal periods and why they did not report them on the timesheets. VOALA submitted declarations from 24 current employees stating they knew the meal period policy and were never pressured to work during meal breaks or forgo them.

VOALA argued that the purported "common question" for the Meal Break Electronic Timekeeping Premium Subclass—that NOVAtime did not pay premiums for meal periods between 29 and 30 minutes—was based "on a deliberate twisting" of Ng's testimony. In a supporting declaration, Ng clarified he meant to testify that VOALA paid meal premiums if the meal period "is 29 minutes or less," which included any meal periods under 30 minutes.

Finally, VOALA argued that plaintiffs failed to proffer evidence showing there was insufficient coverage causing meal or rest break violations for teachers and teaching assistants in the Children's Services Subclass. VOALA contended Cruz's testimony showed that there were enough staff to relieve employees in teaching positions for their breaks. VOALA also submitted declarations from six current teachers attesting that they take fully compliant meal and rest breaks during their shifts.

10

### *Trial Court's Ruling*

The trial court partially granted plaintiffs' motion. First, the court found that numerosity and ascertainability were "assumed to exist" and it would not address the adequacy of the class representatives because VOALA did not contest these elements.

The court found commonality existed for the Underpayment Subclass for only those non-exempt employees whose records reflected rounding to their detriment. The court redefined the subclass accordingly. For the Children's Services Subclass, the trial court found the staffing in each of VOALA's 48 school locations was not "subject to generalized proof," but there was sufficient commonality as to those locations where the class representatives worked. As to these redefined and limited subclasses, the court found the claims of the class representatives satisfied the typicality requirement, and the claims were amenable to class treatment. The trial court also certified the Wage Statement Subclass and the Waiting Time Subclass as derivative of the redefined Underpayment Subclass and limited Children's Services Subclass.

The court found plaintiffs had not established commonality for the other proposed subclasses. As to the Meal Break Policy Subclass, the trial court explained:

> "Merits are not the issue. The question is how much individualized inquiry is needed to know if a given class member suffered harm caused by the alleged illegal policy, and, if so, how much harm. The policy, standing alone, is not sufficient proof that harm was suffered, i.e., that there is any basis for legal liability.

11

This analysis of liability on a class-wide basis for this theory will require an individualized inquiry into why each class member had . . . one or more meal breaks taken late or for less than 30 uninterrupted minutes. For this reason, commonality is lacking. (*Brinker Restaurant Co. v. Superior Court* (2012) 53 Cal.4th 1004 [(*Brinker*)].) That a defendant in *Allison v. Dignity Health . . .* , made a sufficient showing to obtain decertification of a previously certified meal and rest claims does not mean that this Defendant needs to make exactly the same showing to defeat class certification on the first pass, as here.[3] Defendant did protect the right to raise an affirmative defense with its Fifth Affirmative Defense of waiver and estoppel. That it did not make an affirmative showing with its factual submission that some of its declarants knowingly took short or late lunches as a voluntary act does not mean it would not become part of the disputed proof if certification of this subclass was allowed. The existence of presumptions of violation flowing from short and lunch punches on time cards does not foreclose a defendant from defending a class claim with such an

---

[3] During the hearing, plaintiffs' counsel distinguished VOALA's showing from that made by a defendant in *Allison v. Dignity Health*, in which the First District concluded decertification of a class was proper where the defendant established that its defense against the plaintiffs' meal period violation claims would require too many individualized inquiries to be amenable to class treatment. The California Supreme Court has since depublished the decision. (*Allison v. Dignity Health* (June 2, 2025) A169225, review den. and opn. ordered nonpub. Oct. 15, 2025.)

individualized showing. As already noted, the cases are now rather uniform in recognizing that the particulars of why meal and lunch periods are missed is more often than not a matter of individualized proof."

The trial court concluded that the Meal Break Electronic Timekeeping Premium Subclass was "conceptually derivative of the Meal Break Policy Subclass"; therefore, "the same lack of commonality that prevents certification of the Meal Break Policy Subclass prevents certification here." The court found commonality was lacking as to the Meal Break Handwritten Timekeeping Premium Subclass for the same reasons. However, the court additionally concluded that determining liability for the subclass "would take [an] individualized inquiry into why an employee who had taken a late or short meal break did not [choose] to use the available space on the handwritten form to seek the premium payment (a slightly different question from whether the late or short meal break was due to the employee's own conscious choice)."

Plaintiffs petitioned for a writ of mandate. This court issued an alternative writ directing the trial court to vacate its order and reconsider class certification in light of *Donohue* or to show cause why a writ should not issue. The trial court declined to vacate its order, and we issued an order to show cause. VOALA timely filed a return to the petition.

## DISCUSSION

### I. Legal Principles and Standard of Review

Code of Civil Procedure section 382 authorizes class actions "when the question is one of a common or general interest, of

13

many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." A party seeking class certification must show "[1] the existence of an ascertainable and sufficiently numerous class, [2] a well-defined community of interest, and [3] substantial benefits from certification that render proceeding as a class superior to the alternatives." (*Brinker*, *supra*, 53 Cal.4th at p. 1021.) A "community of interest" requires " ' "(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." ' [Citation.]" (*Ibid.*)

" 'The certification question is "essentially a procedural one that does not ask whether an action is legally or factually meritorious." ' [Citations.]" (*Brinker*, *supra,* 53 Cal.4th at p. 1023.) Courts instead assess whether common issues of law or fact are likely to predominate in the determination of liability, making the matter amenable to class treatment. (*Id.* at pp. 1021–1022; *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 327 (*Sav-On*).) Additionally, "[i]n considering whether a class action is a superior device for resolving a controversy, the manageability of individual issues is just as important as the existence of common questions uniting the proposed class." (*Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1, 29 (*Duran*).) "[A] defense in which *liability itself* is predicated on factual questions specific to individual claimants" may make a class action unmanageable. (*Id.* at p. 30.) Therefore, courts must also consider whether "litigation of

14

individual issues, including those arising from affirmative defenses, can be managed fairly and efficiently." (*Id*. at p. 29.)

The question at the certification stage is "whether the operative legal principles, as applied to the facts of the case, render the claims susceptible of resolution on a common basis." (*Ayala v. Antelope Valley Newspapers, Inc.* (2014) 59 Cal.4th 522, 530; *Brinker*, *supra*, 53 Cal.4th at pp. 1023–1025.)  "A trial court is generally afforded great latitude in granting or denying class certification, and we normally review a ruling on certification for an abuse of discretion.  [Citation.]  We do not apply this deferential standard of review if the trial court has evaluated class certification using improper criteria or an incorrect legal analysis: '[A] trial court ruling supported by substantial evidence generally will not be disturbed "unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made . . . ." ' [Citations.]" (*Jaimez v. Daiohs USA, Inc.* (2010) 181 Cal.App.4th 1286, 1297.)

"An appeal from an order denying class certification presents an exception to customary appellate practice by which we review only the trial court's ruling, not its rationale.  If the trial court failed to conduct the correct legal analysis in deciding not to certify a class action, ' "an appellate court is required to reverse an order denying class certification . . ., 'even though there may be substantial evidence to support the court's order.' " ' [Citation.]  In short, we must ' "consider only the reasons cited by the trial court for the denial, and ignore other reasons that might support denial." [Citation.]' [Citations.]" (*Alberts v. Aurora Behavior Health Care* (2015) 241 Cal.App.4th 388, 399.)

## II. The Trial Court Erred In Concluding VOALA's Mere Pleading of An Affirmative Defense Precluded A Finding of Commonality

### A. Employer's meal period obligation

California law prohibits an employer from requiring non-exempt employees to work "more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee." (§ 512, subd. (a); Industrial Welfare Commission (IWC) wage order No. 4-2001, subd. (11)(A).) "[A]bsent waiver, section 512 requires a first meal period no later than the end of an employee's fifth hour of work . . . ." (*Brinker, supra,* 53 Cal.4th at p. 1041.)

"[A]n employer discharges its duty to provide an off-duty break 'if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so.' (*Brinker, supra,* 53 Cal.4th at p. 1040.) When the employer does so, its knowledge that an employee is working through a meal break establishes no violation of the duty to pay premium wages, though the employer must still compensate the employee for the time worked. (*Id.* fn. 19.) In contrast, if the employer knows that meal breaks are missed, shortened, or unduly delayed because the employer has instructed the employee to work, or has otherwise impeded the taking of breaks, that duty is contravened, absent a suitable

16

waiver or agreement by the employee." (*Safeway, Inc. v. Superior Court* (2015) 238 Cal.App.4th 1138, 1155 (*Safeway*); see also *Naranjo v. Spectrum Security Services, Inc.* (2022) 13 Cal.5th 93, 106–107, 117 (*Naranjo*).)

"[T]he remedy for a violation of the statutory obligation to provide IWC-mandated meal . . . periods is 'one additional hour of pay at the employee's regular rate of compensation for each work day that the meal . . . period is not provided.' " (*Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1256; § 226.7, subd. (c).)  "[E]ven a minor infringement of the meal period triggers the premium pay obligation." (*Donohue, supra,* 11 Cal.5th at p. 68.)  "[T]he employee is 'immediately' entitled to the premium wage, without any demand or claim to the employer, in a manner 'akin to an employee's immediate entitlement to payment of wages or for overtime.' " (*Safeway, supra,* 238 Cal.App.4th at p. 1155, quoting *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1108.)  An employer that fails to pay meal period premiums may incur waiting time penalties and penalties for failing to provide accurate itemized wage statements.  (*Naranjo, supra,* 13 Cal.5th at p. 121; §§ 203, 226.)

### B.    *Brinker* and *Donohue*

"In the wage and hour context, a class may establish commonality by showing a uniform policy or practice that causes members to miss or take late meal breaks." (*Estrada v. Royalty Carpet Mills, Inc.* (2022) 76 Cal.App.5th 685, 721(*Estrada*), review granted June 22, 2022, S274340, affd. on another ground (2024) 15 Cal.5th 582.)  Employers are required to record that

they provided timely, 30-minute meal periods to employees. (IWC wage order No. 4-2001, subd. (7)(A)(3).) Our high court has explained how courts should evaluate these records when considering certification of a meal period claim.

In *Brinker*, *supra*, 53 Cal.4th 1004, the court reviewed a challenge to a trial court's certification of a meal period subclass. Although the trial court granted class certification, the Court of Appeal issued writ relief and ordered decertification. (*Id.* at p. 1017.) The high court reversed the Court of Appeal and remanded for the trial court to reconsider its meal period subclass certification based on the high court's clarification of the substantive law. (*Id.* at pp. 1034–1051.) As relevant here, while the *Brinker* court concluded that an employer has an obligation to provide duty-free 30-minute meal breaks, it also explained that "the employer is not obligated to police meal breaks and ensure no work thereafter is performed. Bona fide relief from duty and the relinquishing of control satisfies the employer's obligations, and work by a relieved employee during a meal break does not thereby place the employer in violation of its obligations and create liability for premium pay . . . ." (*Id.* at pp. 1040–1041.)

In a concurrence providing guidance on remand, Justice Werdegar clarified that the court was not holding that "the question why a meal period was missed renders meal period claims *categorically* uncertifiable." (*Brinker*, *supra*, 53 Cal.4th at p. 1052 (conc. opn. of Werdegar, J.).) Instead, Justice Werdegar explained:

> "If an employer's records show no meal period for a given shift over five hours, a rebuttable presumption

18

arises that the employee was not relieved of duty and no meal period was provided. This is consistent with the policy underlying the meal period recording requirement, which was inserted in the IWC's various wage orders to permit enforcement. [Citation.] An employer's assertion that it did relieve the employee of duty, but the employee waived the opportunity to have a work-free break, is not an element that a plaintiff must disprove as part of the plaintiff's case-in-chief. Rather, as the Court of Appeal properly recognized, the assertion is an affirmative defense, and thus the burden is on the employer, as the party asserting waiver, to plead and prove it."

(*Id.* at p. 1053.) Justice Werdegar further explained that individual issues arising from an affirmative defense do not create a per se bar to certification, and "whether in a given case affirmative defenses should lead a court to approve or reject certification will hinge on the manageability of any individual issues." (*Id.* at p. 1054.)

Justice Werdegar further distinguished a defense to liability involving "consideration of numerous intricately detailed factual questions" from a defense to damages that "raises only one or a few questions and that operates not to extinguish the defendant's liability but only to diminish the amount of a given plaintiff's recovery. We have long settled that individual damages questions will rarely if ever stand as a bar to certification." (*Brinker*, *supra*, 53 Cal.4th at p. 1054 (conc. opn. of Werdegar, J.).) Further, "[r]epresentative testimony, surveys, and statistical analysis all are available as tools to render manageable determinations of the extent of liability." (*Ibid.*) In

19

light of those "settled principles," Justice Werdegar concluded the defendant had "not shown the defense it raises, waiver, would render a certified class categorically unmanageable." (*Id*. at p. 1055.)

In *Donohue*, *supra*, 11 Cal.5th 58, the court adopted the analysis set forth in Justice Werdegar's *Brinker* concurrence. In *Donohue*, the trial court certified a class of nurse recruiters who sued their employer for wage-and-hour violations resulting from improper rounding practices. (*Id*. at p. 63.) Both parties moved for summary adjudication. (*Id*. at pp. 63–64.) The trial court granted the employer's motion and denied the plaintiff's motion after concluding there was insufficient evidence of meal period violations. (*Id*. at pp. 64–65.) In affirming, the Court of Appeal rejected the plaintiff's argument that, at the summary adjudication stage, time records showing noncompliant meal periods gave rise to a rebuttable presumption of meal period violations. (*Id*. at p. 65.)

The California Supreme Court reversed. After determining that the employer's rounding policy for meal periods was unlawful, the court further concluded that the employer's time records showing missed, short, or delayed meal periods raised a rebuttable presumption of liability. (*Donohue*, *supra*, 11 Cal.5th at p. 74; see also *id*. at p. 76.) Adopting Justice Werdegar's concurrence "in full," the court held that an employer's assertion that employees had voluntarily waived their meal periods is an affirmative defense the employer has the burden to plead and prove at the summary adjudication stage, "not just at the class certification stage." (*Id*. at pp. 75, 76.) The court explained:

20

"The rationale underlying the rebuttable presumption supports these conclusions. The presumption derives from an employer's duty to maintain accurate records of meal periods. [Citations.] It is important that employers keep accurate records so that enforcement agencies can ' "adequately investigate and enforce" a wage order's meal period provisions.' [Citation.] Because time records are required to be accurate, it makes sense to apply a rebuttable presumption of liability when records show noncompliant meal periods. If the records are accurate, then the records reflect an employer's true liability; applying the presumption would not adversely affect an employer that has complied with meal period requirements and has maintained accurate records. If the records are incomplete or inaccurate—for example, the records do not clearly indicate whether the employee chose to work during meal periods despite bona fide relief from duty—then the employer can offer evidence to rebut the presumption. It is appropriate to place the burden on the employer to plead and prove, as an affirmative defense, that it genuinely relieved employees from duty during meal periods."

(*Id*. at p. 76, citing & quoting *Brinker*, *supra*, 53 Cal.4th at p. 1053 (conc. opn. of Werdegar, J.).)

The *Donohue* court remanded the matter to allow the parties to present evidence as to whether there were records of short or delayed meal periods for which no premium wages were paid. (*Donohue*, *supra*, 11 Cal.5th at p. 79.) The high court explained that the introduction of such records would give rise to a presumption of meal period violations, which the employer

21

could rebut "by presenting evidence that employees were compensated for noncompliant meal periods or that they had in fact been provided compliant meal periods during which they chose to work." (*Id.* at p. 77.) Although class certification was not at issue in *Donohue*, the court further quoted the *Brinker* concurrence's analysis: " 'Representative testimony, surveys, and statistical analysis,' along with other types of evidence, 'are available as tools to render manageable determinations of the extent of liability.' (*Brinker*, *supra*, 53 Cal.4th at p. 1054 (conc. opn. of Werdegar, J.).)" (*Ibid.*)

### C.   The trial court failed to consider the *Donohue* burden-shifting framework

The trial court here acknowledged *Donohue*, but we agree with plaintiffs that the court improperly failed to consider the burden-shifting framework in assessing whether certification of the meal break subclasses was appropriate. Plaintiffs argued several uniform policies and practices caused VOALA to violate the law regarding meal periods. They supported their certification motion with evidence of those policies and practices. The record contains time records reflecting short, late, or missed meal periods, with no indication of premium pay. The trial court appeared to accept that these theories and records were sufficient to show the predominance of common questions and issues susceptible of common proof. Yet, the court nevertheless reasoned "[t]he policy, standing alone, is not sufficient proof . . . that there is any basis for legal liability. This analysis of liability on a class-wide basis for this theory will require an individualized inquiry into why each class member had a [*sic*] one or more meal

22

breaks taken late or for less than 30 uninterrupted minutes. For this reason, commonality is lacking."

This reasoning was in direct conflict with our high court's guidance *rejecting* the proposition that "the question why a meal period was missed renders meal period claims *categorically* uncertifiable." (*Brinker*, *supra*, 53 Cal.4th at p. 1052 (conc. opn. of Werdegar, J.); *Donohue*, *supra*, 11 Cal.5th at p. 75.) Further, " '[a]n employer's assertion that it did relieve the employee of duty, but the employee waived the opportunity to have a work-free break, is not an element that a plaintiff must disprove as part of the plaintiff's case-in-chief.' " (*Donohue*, at p. 74.)

Notably, the trial court did not reject plaintiffs' evidentiary showing that VOALA's time records showed late, missed, or short meal periods, consistent with plaintiffs' theories of uniform unlawful meal period policies and practices. As such, under *Donohue,* plaintiffs made at least a threshold showing that they would be able to rely on a rebuttable presumption of liability. VOALA would have the burden to prove waiver and, accordingly, VOALA had the burden to demonstrate that proving that affirmative defense would cause individual issues to predominate in the litigation and would render class treatment unmanageable. (*Estrada, supra*, 76 Cal.App.5th at pp. 723–724 [trial court erred in failing to apply *Donohue* presumption in decertification proceedings; since plaintiffs presented time record evidence, burden would have shifted to defendant to establish waiver and "[i]t then follows that the burden would have been on [defendant], not plaintiffs, to show individual issues predominated"].)

The trial court did not assess whether VOALA had established that its defense would require individualized proof or to what extent any individual questions would predominate or render a class proceeding unmanageable.  Instead, the court concluded that VOALA's act of pleading waiver and estoppel in its answer was enough.  Indeed, the court expressly noted that VOALA did "not make an affirmative showing with its factual submission that some of its declarants knowingly took short or late lunches as a voluntary act," but reasoned that the failure to make that showing "does not mean it would not become part of the disputed proof if certification of this subclass was allowed." We disagree that pleading the affirmative defense without any supporting evidentiary showing was enough to demonstrate a lack of commonality or manageability.

The trial court correctly noted that the presumption did not prevent VOALA from raising waiver as an affirmative defense. (*Duran*, *supra*, 59 Cal.4th at p. 38 [defendants must have opportunity to present proof of affirmative defenses].)  But the pleading of the affirmative defense *alone* did not establish that individual issues rendered class treatment inappropriate.  As our high court noted in *Estrada v. Royalty Carpet Mills, Inc.* (2024) 15 Cal.5th 582, "class action defendants do '*not* have an unfettered right to present individualized evidence in support of a defense' " and "courts may exercise discretion regarding how to adjudicate [affirmative] defenses, so long as the defendant is permitted 'to introduce its own evidence, both to challenge the plaintiffs' showing and to reduce overall damages.' [Citation.]" (*Id*. at p. 616.)  The trial court was required to evaluate whether

24

VOALA had demonstrated its affirmative defense of waiver presented individual questions that could not be fairly and effectively managed as a class action. (*Donohue, supra,* 11 Cal.5th at p. 76; *Brinker, supra,* 53 Cal.4th at p. 1055 (conc. opn. of Werdegar, J.); see also *Santillan v. Verizon Connect, Inc.* (S.D.Cal., June 13, 2022, No. 3:21-CV-1257-H-KSC) 2022 WL 4596574, p. *13 [defendant's evidence in support of waiver was common to class and did not raise individualized issues].)

By focusing only on VOALA's bare pleading of a waiver defense, without requiring any evidentiary support or specific argument to support that defense, the trial court failed to consider the *Donohue* court's "explicit direction on issues of proof in such cases." (*Martinez v. Joe's Crab Shack Holdings* (2014) 231 Cal.App.4th 362, 383 [trial court erred in accepting defense argument on outside salesperson exemption in contravention of guidance in *Sav-On*]; see, e.g., *Sav-On, supra,* 34 Cal.4th at p. 338 [rejecting defense argument requiring certification proponent in overtime cases to prove entire class is non-exempt whenever defendant raises affirmative defense of exemption].)

We cannot determine with any reasonable certainty what the trial court's conclusion would have been had it conducted the required analysis. Plaintiffs' complaint, theories alleged, declarations, and deposition testimony suggested their claims would be amenable, in large part, to common proof, and that common questions would predominate. VOALA's evidence was primarily intended to establish that its policies and practices were lawful and that it uniformly made premium payments for missed, late, or delayed meal breaks. This did not present

25

individual questions. The trial court did not find that VOALA's *evidence* established individual issues would predominate. And the trial court suggested that VOALA did not offer *any* evidence to support a defense that individual employees were provided compliant meal breaks but they chose to work instead. There were no declarations submitted to that effect. The pleading of waiver as an affirmative defense alone is not substantial evidence that there is no community of interest among class members.

To the extent VOALA argues *Donohue* should be interpreted more narrowly to apply only to rounded time entries reflected in electronic records, and not to claims of a facially invalid meal period policy or time recorded in handwritten records, we disagree. Nothing in the *Donohue* decision limited the presumption in the manner VOALA suggests. Instead, it described the presumption as " 'consistent with the policy underlying the meal period recording requirement, which was inserted in the IWC's various wage orders to permit enforcement.' " (*Donohue*, *supra*, 11 Cal.5th at p. 74.) This underlying policy applies irrespective of the reason why an employer has failed to record or provide required meal periods.

VOALA further urges that we should not disturb the trial court's order denying certification of the Meal Break Electronic Timekeeping Premium Subclass. It contends that plaintiffs cannot present common proof that NOVAtime failed to pay a premium for meal periods between 29:01 and 29:59 in duration because NOVAtime records do not "track time down to the very second." VOALA misconstrues plaintiffs' theory of liability. Plaintiffs' theory is that NOVAtime was programmed to

26

automatically pay premiums for meal periods less than 29 minutes, instead of less than 30 minutes. Records need not show times recorded to the second to support this theory. Moreover, the theory does not involve individual questions, but instead concerns the operation of VOALA's timekeeping system, independent of individual behavior. Plaintiffs' theory concerns an unlawful policy, not questions of liability that would vary on an individual basis.

In sum, on remand, the trial court must assess whether any or all of the meal break subclasses are amenable to class treatment, taking into consideration *Donohue* on the issue of commonality. As the court has already appeared to conclude that plaintiffs' evidentiary showing established VOALA's records reflect meal breaks on a class-wide basis that were short, late, or missed without premiums being paid, triggering the *Donohue* presumption, the trial court must evaluate whether VOALA has demonstrated through evidence and legal argument—and not simply asserted—that the litigation of its affirmative defenses will cause individual issues to predominate and would render a class action unmanageable.

## III. Substantial Evidence Supported The Trial Court's Ruling Limiting The Children's Services Subclass To Locations Where The Class Representatives Worked

The trial court certified a limited Children's Services Subclass that included only the locations where the putative class representatives worked in teaching positions. The court concluded that the theory alleging that understaffing at each of VOALA's 48 locations resulted in meal and rest period violations

27

was "not subject to generalized proof." Plaintiffs argue the trial court erred because Cruz's deposition testimony was "common proof" that staffing levels were insufficient to ensure that teachers were afforded meal and rest periods at all VOALA sites. We disagree.[4]

"Plaintiffs' burden on moving for class certification . . . is not merely to show that some common issues exist, but, rather, to place substantial evidence in the record that common issues *predominate*. . . . '[T]his means "each member must not be required to individually litigate numerous and substantial questions to determine his [or her] right to recover following the class judgment; and the issues which may be jointly tried, when compared with those requiring separate adjudication, must be sufficiently numerous and substantial to make the class action advantageous to the judicial process and to the litigants." ' [Citation.]" (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1108 (*Lockheed*).)

Substantial evidence supported the trial court's conclusion that plaintiffs' understaffing theory could not be established with common proof as to all VOALA locations. (*Soderstedt v. CBIZ Southern California, LLC* (2011) 197 Cal.App.4th 133, 144.) Cruz testified that the number of classrooms, the number of

---

[4] Plaintiffs' proposed Children's Services Subclass involved meal and rest break claims. Plaintiffs do not contend that the *Donohue* presumption of liability applies to claims regarding rest breaks, which, unlike meal periods, employers have no obligation to record. (Cal. Code Regs., tit. 8, § 11040, subd. (7)(A)(3) ["authorized rest periods need not be recorded"].)

28

supervisory staff, and the type of programming varied at each site.  For example, during the class period, the Children's Services program operated anywhere from 40 to 51 sites.  Sites had between one and six classrooms.  VOALA policy required more than one adult with supervisory responsibility over the children to be present in each classroom at all times.  Cruz testified that to ensure they maintained mandatory staffing ratios, other staff members with supervisory responsibility provided coverage for teachers on breaks.  Breaks were "staggered" to ensure teachers received breaks and supervisory ratios were met.  Cruz identified over 20 positions that could provide coverage for teachers, including supervisors, family advocates, coaches, and aides.  He testified that the program currently employs 13 "education coordinators" and six "education managers" for 48 locations, but he did not identify the total number of employees in any other positions.  Cruz also testified that the specifics of each program—full-day with nap time or a "double session" in which the children go home after lunch— allowed for a lower staffing ratio and for breaks.

According to Cruz's testimony, the Children's Services handbook stated that the workday was eight hours long and employees would take a meal break and "an afternoon break." The human resources department trained Children's Services personnel "to ensure meal breaks and rest breaks are being met." Human resources notified the program if they noticed problems with scheduling.  Cruz testified that the corporate office oversaw the human resources department.  He had no oversight as the program director.

Plaintiffs contend Cruz's testimony established that VOALA failed to hire sufficient staff to ensure teachers were given the opportunity to take compliant meal and rest breaks. Relying on the numbers Cruz provided, plaintiffs calculate that "at a minimum there were 140 teachers" who needed "a total of 420" meal and rest breaks and only "150 other employees who may or [may] not be on site and who have their own job duties and responsibilities." They assert that these numbers alone demonstrate that VOALA could not have staffed each site sufficiently to provide compliant meal and rest periods. This argument, however, requires that the staffing numbers be aggregated and applied across the 48 sites equally. The evidence before the trial court was inconsistent with that approach.

Plaintiffs provided no evidence about how VOALA assigned personnel among all locations, how many employees with supervisory authority were present at any given location, or how the program handled hiring or scheduling. Further, to the extent that staffing led to meal and rest break violations, plaintiffs offered no evidence that the violations were the result of uniform policies or procedures. Cruz indicated that the availability of staff varied widely between sites; not all supervisory staff were continuously present at the school sites; and staff who created the schedules were trained on meal and rest break requirements by human resources. There was no showing that each site was staffed, or understaffed, in the same manner or during the same relevant periods. In the absence of evidence that "points to a uniform, companywide policy," VOALA's liability for all 48 sites would require highly individualized proof establishing where and

30

when each putative class member worked, what other staff members with supervisory authority were present at the site at the time the class members were working, how breaks were staggered between them, and the type of program session in effect during their shifts.  (*Brinker*, *supra*, 53 Cal.4th at p. 1052.) Substantial evidence supported the trial court's conclusion that plaintiffs cannot prove their theory of liability for teachers' meal and rest break violations as to all 48 sites with common proof and common questions would not predominate.  (*Lockheed*, *supra*, 29 Cal.4th at p. 1108.)  The trial court did not abuse its discretion in certifying only a limited subclass.

## DISPOSITION

The petition for writ of mandate is granted in part. Respondent Los Angeles Superior Court is directed to vacate its order denying certification as to the Meal Break Policy Subclass, the Meal Break Electronic Timekeeping Premium Subclass, the Meal Break Handwritten Timekeeping Premium Subclass, and the derivative penalty subclasses. The trial court is further directed to reconsider plaintiffs' class certification motion as to these subclasses, consistent with the views expressed in this opinion. In all other respects, the petition is denied. Petitioners are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ADAMS, Acting P. J.


We concur:


HANASONO, J.


MORI, J.*

---

\*     Associate Justice of the Court of Appeal, Second Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.